# ILLINOIS OFFICIAL REPORTS

## Supreme Court

***People v. Hale*, 2013 IL 113140**

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. CLEARTHUR HALE, a/k/a James Hale, Appellee. |
| Docket No. | 113140 |
| Filed | October 3, 2013. |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A record which showed that a defendant's rejection of a plea offer was not based on his allegations of counsel's erroneous advice as to consecutive sentencing, but on other considerations, did not establish the prejudice which had to be shown to establish a constitutional claim of ineffective assistance of counsel. |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Sharon M. Sullivan, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment affirmed. |

Counsel on
Appeal

Lisa Madigan, Attorney General, of Springfield, and Anita Alvarez,
State's Attorney, of Chicago (Alan J. Spellberg and Annette Collins,
Assistant State's Attorneys, of counsel), for the People.


Robert M. Stephenson, of Becker Stephenson LLC, of Chicago, for
appellee.



Justices

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Freeman, Thomas, Garman, Burke,
and Theis concurred in the judgment and opinion.

**OPINION**


¶ 1     The issue presented for our review is whether defendant, Clearthur (also known as
James) Hale, was denied his constitutional right to the effective assistance of counsel during
plea negotiations with the State when his trial counsel failed to inform him that he would
receive mandatory consecutive sentences under section 5-8-4(a) of the Unified Code of
Corrections (Code) (730 ILCS 5/5-8-4(a) (West 2008)), if convicted of both counts of
attempt (first degree murder) with which he was charged. The circuit court of Cook County
rejected defendant's ineffective assistance of counsel claim. The appellate court, however,
relying on the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687,
688 (1984), concluded that trial counsel, Tod Urban,[1] was constitutionally ineffective
because defendant had shown both that counsel's performance " 'fell below an objective
standard of reasonableness' and that the deficient performance prejudiced the defense.
*People v. Hodges*, 234 Ill. 2d 1, 17 (2009), quoting *Strickland*, 466 U.S. at 687-88." 2011 IL
App (1st) 090110-U, ¶¶ 16, 27. The appellate court therefore reversed defendant's
convictions and remanded the cause for the resumption of plea negotiations and a new trial
if necessary. *Id.* ¶ 27. We granted the State's petition for leave to appeal (Ill. S. Ct. R. 315
(eff. Feb. 26, 2010)), and now conclude that defendant did not establish the prejudice prong
of *Strickland*. Thus, we reverse the judgment of the appellate court and affirm the judgment
of the circuit court.

---

[1]While trial counsel is referred to both as "Todd" and "Tod" Urban at various points in the
record and briefs filed in this court, when testifying before the circuit court, he spelled his name "T-
O-D."

-2-

¶ 2                              BACKGROUND

¶ 3      Following a jury trial, defendant was found guilty of two counts of attempt (first degree murder), one count of aggravated battery with a firearm, and one count of aggravated discharge of a firearm toward an occupied vehicle. At trial, the State's evidence showed, *inter alia*, that around 4 a.m. on February 25, 2001, defendant fired approximately eight shots at a vehicle containing Marvin Tankson, the driver, and Jassandra Booker, the passenger, because that vehicle had significantly decreased its speed on the expressway. Tankson testified that defendant, in a Nissan Pathfinder, pulled up near Tankson's vehicle and asked why he was slowing down traffic. When Tankson responded that he was warning another driver about a loose bumper, defendant replied that he did not care, stated "[d]o you know who the f**k I am," then brandished a gun. Booker was shot as Tankson attempted to speed away.

¶ 4      As a result of her injury, Booker underwent multiple surgeries and was kept in a coma for several weeks. Tankson viewed a security tape from a nightclub where he told police he had seen defendant earlier on the night in question, and positively identified defendant as the shooter. Tankson also identified defendant in both a photographic array and a physical lineup. Booker identified defendant as the shooter from a photographic array.

¶ 5      Latasha Wheeler testified for the defense that on the night of the offense she was riding in the Pathfinder along with her now-deceased boyfriend, Jeffrey Smith, when Smith started shooting at Booker and Tankson. At trial, Wheeler recanted her statement made to an assistant State's Attorney approximately five weeks after the crime, wherein she identified defendant as the shooter. She claimed that she lied in her statement so that Smith would not go to jail and because he had threatened her. However, she admitted that Smith had been killed long before defendant's trial, and despite the fact that she was no longer afraid of Smith, she did not go to police to say she had accused the wrong man. In rebuttal, the assistant State's Attorney who had handwritten Wheeler's signed statement read it into evidence. The jury found defendant guilty on all four counts.

¶ 6      Prior to sentencing, but following the denial of defense counsel Urban's motion for a new trial, counsel told the court that defendant had a *pro se* motion alleging counsel's ineffectiveness which he wanted to file. The trial court refused to hear defendant's motion and proceeded to sentencing. In aggravation, *inter alia*, the State emphasized Booker's serious injuries, noted that defendant's extensive criminal background made him eligible for an extended term, and asked for consecutive sentencing on his convictions. The State also called Tankson, who testified that, in May 2001, three months after the shooting, he was approached by two men, Marshall Miller and Roosevelt Gaters. Gaters identified himself as defendant's friend and offered Tankson $10,000 in exchange for his recantation and offered to take Tankson to talk to defendant. When the men left, Tankson immediately called Illinois State Police Special Agent Robert Hunt, who was investigating the case, and told him what had happened. Although Hunt showed Tankson a photograph of Roosevelt Gaters, Tankson

did not identify or name him at the time because he was "scared."[2]

¶ 7        In mitigation, *inter alia*, defense counsel Urban challenged the State's request for consecutive terms, arguing that the shooting "all happen[ed] in the same course of conduct." Counsel asserted that consecutive sentencing was not warranted where the charges stemmed from "shots being randomly fired at the car" and thus there was only one offense, stating: "The aggravated battery with a firearm is the same as the attempt murder is the same as the aggravated discharge." Counsel argued that the sentencing range should be 6 to 30 years, extendable to 60 years by background, and concurrent. Defendant's statement in allocution maintained that he "never did nothing to [Booker]," and repeatedly asked to present his *pro se* motion, alleging ineffective assistance of trial counsel, to the court.

¶ 8        At the hearing's conclusion, the court reviewed the charges, two Class X felony attempt (first degree murder) counts punishable by terms of 6 to 30 years with an extended range of 30 to 60 years, a Class X felony aggravated battery with a firearm count, and a Class 1 felony aggravated discharge of a firearm count. The court found that Booker suffered severe bodily injury and, thus, consecutive sentencing under section 5-8-4 of the Code was mandatory. The court also noted that because seven or eight shots were fired, there were sufficient acts for both attempt (first degree murder) counts to stand, but merged the counts of aggravated battery with a firearm and aggravated discharge of a firearm toward an occupied vehicle into the attempt counts. The court then sentenced defendant to a 30-year term for the attempt (first degree murder) count involving Booker, and a consecutive 10-year term for the attempt count involving Tankson. Thereafter, defendant again notified the court that he wanted to file his *pro se* motion, but while the court stated that defendant could "file your piece of paper," the court declined to address it.

¶ 9        On direct appeal, defendant argued, as pertinent here, that the trial court should have inquired into the basis of his *pro se* motion alleging ineffective assistance of counsel pursuant to this court's holding in *People v. Krankel*, 102 Ill. 2d 181 (1984). The appellate court accepted the State's concession that the trial court erred and remanded for the limited purpose of allowing the trial court to conduct the necessary *Krankel* preliminary investigation in accordance with *People v. Moore*, 207 Ill. 2d 68 (2003). *People v. Hale*, No. 1-04-0070, slip op. at 9 (2006) (unpublished order under Supreme Court Rule 23). *Moore*, 207 Ill. 2d at 81, explained that in such a limited remand, if the court determines that the defendant's claims of ineffectiveness are spurious or pertain only to trial strategy, the court may then deny the motion and leave standing defendant's convictions and sentences. "However, if the allegations show possible neglect of the case, new counsel should be appointed." *Id.* at 78.

¶ 10        In August 2006, following resolution of defendant's direct appeal, he filed another *pro*

---

[2]On direct appeal, defendant argued, *inter alia*, that the trial court erred in admitting irrelevant, unreliable hearsay at his sentencing hearing regarding the above-described alleged attempt to bribe a witness in this case. However, as defendant failed to raise this issue in his postsentencing motion and did not assert that the issue be considered under the plain-error rule, the panel held that defendant had "waived" the issue. *People v. Hale*, No. 1-04-0070, slip op. at 9 (2006) (unpublished order under Supreme Court Rule 23).

*se* motion, entitled "Motion for New Trial on the Grounds of Ineffective Assistance of Counsel." This motion was different from the original motion the trial court had eventually allowed defendant to file at sentencing. In this new motion, defendant reiterated many of his earlier claims and, for the first time, he alleged ineffective assistance of counsel during plea negotiations. Next, in June 2007, following review of defendant's original *pro se* motion, the trial court appointed counsel to represent defendant on the six of his eight *pro se* claims of ineffective counsel alleged therein, which the court could not say were "completely without merit." Appointed counsel later filed a "Supplemental Motion for a New Trial," which included, *inter alia*, defendant's new claim that: "[Defense counsel] Todd Urban improperly advised the defendant that the maximum sentence he could receive was thirty years Illinois Department of Corrections. The defendant relied on this misinformation when deciding whether to proceed to trial or accept a plea agreement."

¶ 11 The matter then proceeded to an evidentiary hearing on the allegations of ineffective assistance of trial counsel with defendant testifying, in relevant part, that Urban visited him about a week before trial and informed him that the State had offered him 15 years' imprisonment in exchange for his guilty plea. The appellate court's summary of the remainder of defendant's testimony, which we find to be accurate, is as follows:

> "Counsel stated that the sentencing range for the offenses was 6 to 30 years at 85%. Defendant asked what his sentence would be if convicted on all counts and counsel responded: ' "Don't worry about that. It's just carry 6 to 30. It all run together." ' Defendant understood this to mean his sentences would be concurrent. He did not know he was subject to consecutive sentences or that he was potentially subject to an extended term.
>
> Defendant stated that in light of the plea offer, he asked counsel to make a counteroffer of 12 years. Counsel told him that the State's Attorney had not even wanted to offer 15 years, but rather 20. Defendant responded: 'Well, tell him 50 percent, and they got some action.' Defendant asked the State's Attorney about the counteroffer, but the State's Attorney rejected it.
>
> Defendant testified that, given the plea offer and his understanding that the sentences would be concurrent, he believed he 'might as well go to trial then ***.' Defendant stated that had he known he was subject to consecutive sentences, he 'would have been inclined' to accept the State's 15-year plea offer."[3] 2011 IL App (1st) 090110-U, ¶¶ 10-12.

¶ 12 Following defendant's testimony, the State called trial counsel Urban, and the following

---

[3]Although defendant referenced a failure by counsel to communicate his potential for extended-term sentences, in this court, defendant only argues that his trial counsel was ineffective because counsel told defendant that he would not be subject to consecutive sentences if convicted of more than one count of attempt (first degree murder), when consecutive sentences were mandatory. As defendant does not contend counsel was ineffective with respect to any failure in relaying the possibility for extended-term sentences, and defendant did not receive an extended-term sentence following trial, we do not address that question.

colloquy relevant herein occurred:

"Q. MS. SHERIDAN [Assistant State's Attorney]: If you had received an offer of 15 years, you would have had to share that with your client, right?

A. MR. URBAN: I did *** I do recall now. Yes, we talked about it, and he was not interested in taking—he wanted a trial.

\* \* \*

Q. All right. What did you tell him with regard to the sentence?

A. 15 years attempt murder, 85 percent time.

Q. All right. Did you tell him, 'Don't worry about it; it's only 6 to 30'?

A. No.

Q. Did you ever tell him that the maximum sentence he could receive was 30 years in the Illinois Department of Corrections?

\* \* \*

A. We talked about the original case being 6 to 30. And I told him there was a chance, although I believed it was a—that it was improper, that he could be sentenced consecutively on the other counts.

But I think my statement to him was I thought this was one act/one crime. It happened in two seconds. So, I didn't believe the judge would sentence him consecutively. But I told him the possibility existed. But, again, I told him in my opinion I didn't think it was going to happen.

Q. But you did relay that information that it could possibly happen?

A. I did."

Additionally, defendant testified that he knew the difference between consecutive and concurrent sentences at the time counsel discussed the plea offer with him, and Urban testified that he had discussed with defendant the differences between the two types of sentences.

¶ 13    Following testimony and argument by the parties, the trial court rejected defendant's ineffective assistance of counsel claim, holding that trial counsel testified credibly that he discussed the relevant sentencing range with defendant and that "it could be consecutive." The court stated that counsel "didn't believe it would run consecutive, but he certainly had those discussions with his client." Defendant appealed and, as earlier noted, the appellate court reversed and remanded, holding that counsel's failure to inform defendant during plea negotiations of the mandatory consecutive-term sentence he faced constituted ineffective assistance under *Strickland*.

¶ 14                                         ANALYSIS

¶ 15    In general, the standard of review for determining if an individual's constitutional rights have been violated is *de novo*. *People v. Burns*, 209 Ill. 2d 551, 560 (2004); see also *People v. Ramsey*, 239 Ill. 2d 342, 438 (2010). Both the United States and Illinois constitutions guarantee criminal defendants the right to the effective assistance of counsel. U.S. Const.,

amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *Strickland*, 466 U.S. at 685-86; *People v. Albanese*, 104 Ill. 2d 504, 525-26 (1984).[4] The sixth amendment right to the effective assistance of counsel applies to the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. ___, ___, 132 S. Ct. 1376, 1384 (2012); see also *Missouri v. Frye*, 566 U.S. ___, ___, 132 S. Ct. 1399, 1406-07 (2012); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). "*Hill* established that claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*." *Frye*, 566 U.S. at ___, 132 S. Ct. at 1405 (citing *Hill*, 474 U.S. at 57).

¶ 16    In *People v. Curry*, 178 Ill. 2d 509, 528 (1997), this court recognized a sixth amendment right to effective assistance of counsel during plea negotiations, holding: "A criminal defendant has the constitutional right to be *reasonably* informed with respect to the direct consequences of accepting or rejecting a plea offer." (Emphasis in original.) This right to effective assistance of counsel extends to the decision to reject a plea offer, even if the defendant subsequently receives a fair trial. *Id.* at 518. As in *Curry*, 178 Ill. 2d at 536, the appellate court herein determined, based upon the specific circumstances of the case, that defense counsel's performance during plea negotiations was both "objectively unreasonable under *Strickland*" and that there was resulting prejudice. 2011 IL App (1st) 090110-U, ¶¶ 22, 25.

¶ 17    However, we may dispose of an ineffective assistance of counsel claim by proceeding directly to the prejudice prong without addressing counsel's performance. *Strickland*, 466 U.S. at 697; *Albanese*, 104 Ill. 2d at 527; *People v. Echols*, 382 Ill. App. 3d 309, 312-13 (2008). In the case at bar, while the State argues that the appellate court erred in finding that defendant established *both* prongs of the *Strickland* test, it acknowledges that, "[e]ven if counsel's advice was deficient, *** defendant failed to show any resulting prejudice." Thus, this case may be resolved by determining whether the facts of record show that defendant was prejudiced in rejecting the State's plea offer due to counsel's alleged failure to properly inform him that he faced mandatory consecutive sentences if he went to trial.

¶ 18    To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Curry*, 178 Ill. 2d at 529-30. In other words, the defendant must establish that there is a reasonable probability that, absent his attorney's deficient advice, he would have accepted the plea offer. *Id.* at 531. This showing of prejudice must encompass more than a defendant's own " 'subjective, self-serving' " testimony. *Id.* (quoting *Turner v. Tennessee*, 858 F.2d 1201, 1206 (6th Cir. 1988), *vacated on other*

---

[4]The record shows that defendant has consistently based his ineffective assistance of counsel claim solely on the sixth amendment to the federal constitution and *Strickland*, and has made no mention of his concomitant right under the Illinois constitutional. Further, as earlier noted, the appellate court relied on the two-prong standard set forth in *Strickland* in concluding that trial counsel was constitutionally ineffective in representing defendant during plea negotiations. 2011 IL App (1st) 090110-U, ¶¶ 16, 27. We therefore confine our analysis to whether a violation of defendant's sixth amendment right to effective assistance has occurred.

*grounds*, 492 U.S. 902 (1989)). Rather, there must be "independent, objective confirmation that defendant's rejection of the proffered plea was based upon counsel's erroneous advice," and not on other considerations. *Curry*, 178 Ill. 2d at 532. The disparity between the sentence a defendant faced and a significantly shorter plea offer can be considered supportive of a defendant's claim of prejudice. See *id.* at 533.

¶ 19     Recently, the United States Supreme Court issued the companion cases of *Missouri v. Frye*, 566 U.S. ___, 132 S. Ct. 1399 (2012), and *Lafler v. Cooper*, 566 U.S. ___, 132 S. Ct. 1376 (2012), which both addressed issues of ineffective assistance of counsel similar to those raised in *Curry* and the case at bar. As to the factors required to meet a *Strickland* showing of prejudice in such cases, the Court in *Frye* specifically stated that:

> "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. *Defendants must also demonstrate a reasonable probability that the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law*. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." (Emphasis added.) *Frye*, 566 U.S. at ___, 132 S. Ct. at 1409.

See also *Cooper*, 566 U.S. at ___, 132 S. Ct. at 1384-85.[5]

¶ 20     While it is clear that the first and last factors which *Frye* and *Cooper* set forth as necessary to establish the prejudice prong of *Strickland* are similar to those set forth in *Curry*, the requirements highlighted above are new. In *Curry*, we did not address whether a defendant need demonstrate a reasonable probability that the plea would have been entered without the prosecution canceling it, and rejected the contention that a defendant must show that the trial judge would have accepted the plea agreement. *Curry*, 178 Ill. 2d at 533-35. We recognize that "[w]e are bound to follow the United States Supreme Court's interpretation of the Constitution of the United States." *People v. Wagener*, 196 Ill. 2d 269, 287 (2001). Thus, *Frye* and *Cooper*, rather than *Curry*, control and the factors set forth in those cases must now be relied upon in deciding if prejudice has been shown where a plea offer has lapsed or been rejected because of counsel's deficient performance.

¶ 21     Here, however, based on our examination of the record, defendant cannot demonstrate *Frye* and *Cooper*'s initial requirement to establish the prejudice prong, *i.e.*, that there is a

---

[5]On February 25, 2013, the United States Supreme Court granted the State of Michigan's petition for a writ of *certiorari* in a case which presents, *inter alia*, the question of whether a convicted defendant's subjective testimony that he would have accepted a plea is, but for ineffective assistance, sufficient to demonstrate a reasonable probability that defendant would have accepted the plea. *Burt v. Titlow*, No. 12-414, Question Presented (U.S. Feb. 25, 2013), http://www.supremecourt.gov/qp/12-00414qp.pdf.

reasonable probability that he would have accepted the earlier plea offer had he been afforded effective assistance of counsel. Stated another way, both this court in *Curry* and the United States Supreme Court in *Frye* and *Cooper* agree that, in order to establish the prejudice prong of *Strickland*, a defendant must show that he would have accepted the State's plea offer had counsel's performance not been deficient. Absent defendant's demonstration of this factor, prejudice cannot be proven and there is no need to address the additional factors set forth in *Frye* and *Cooper*.

¶ 22      Our analysis therefore begins, and in this case ends, with the determination of whether defendant would have accepted the State's 15-year plea offer if not for the alleged erroneous advice of defense counsel Urban. The appellate court herein appears to have based its finding of prejudice on the fact that:

> "Counsel acknowledged his misunderstanding of the law by stating that consecutive sentences would be 'improper,' when they were in fact mandatory in this case. *** Based on counsel's own testimony, then, we find counsel's advice made it impossible for defendant to make a knowing and voluntary decision regarding the State's plea offer. [Citation.] Defendant has met the prejudice prong under *Strickland*." 2011 IL App (1st) 090110-U, ¶ 25.

¶ 23      Initially, we observe that "[a]n inquiry into whether the rejection of a plea is knowing and voluntary *** is not the correct means by which to address a claim of ineffective assistance of counsel" arising out of the plea-negotiation process. *Cooper*, 566 U.S. at ___, 132 S. Ct. at 1390 (citing *Hill*, 474 U.S. at 57-59). Additionally, we agree with the State that the appellate court's reasoning was flawed where its prejudice analysis failed to assess whether defendant had shown that counsel's deficient advice *led defendant to reject the plea offer*. See *Cooper*, 566 U.S. at ___, 132 S. Ct. at 1385 (where the ineffective advice of counsel led to a plea offer's rejection and a defendant's having to stand trial, he must show, *inter alia*, that, but for the ineffective advice, there is a reasonable probability he would have accepted the plea); see also *Frye*, 566 U.S. at ___, 132 S. Ct. at 1409; *Curry*, 178 Ill. 2d at 531.

¶ 24      In the case at bar, the only evidence defendant offered regarding why he chose not to plead guilty was his own self-serving testimony that, if he had known that he "could get consecutive sentencing," he "would have been inclined to take the 15 years then." This testimony was deemed incredible by the circuit court. Based on an examination of *Curry*, we believe the circuit court's credibility determination herein was not against the manifest weight of the evidence. In *Curry*, much the same as in this case, the defendant testified that he would have accepted the State's plea offer of 4½ years had he known consecutive sentences, resulting in a maximum term of 12 years' imprisonment, were mandatory. This court found that the defendant's testimony, standing alone, was subjective, self-serving and insufficient to satisfy the *Strickland* requirement for prejudice. *Curry*, 178 Ill. 2d at 531.

¶ 25      However, as succinctly stated by the appellate court herein:

> "The [*Curry*] court *** found there was additional evidence, including defense counsel's statements from the sentencing hearing and counsel's uncontradicted affidavit, which corroborated defendant's claim. In finding prejudice, the court stated the significant factors included both defendant's weak case, wherein he admitted to

every element of the sex offense save consent, and the disparity between the 12-year sentence and the 4½-year plea offer. However, the court concluded that defense counsel's affidavit, stating that the defendant rejected the plea offer based on counsel's erroneous advice, was the most important factor showing prejudice." 2011 IL App (1st) 090110-U, ¶ 24.

Unlike in *Curry*, and contrary to the appellate court's finding in this case, we can find no additional evidence substantiating defendant's claim of prejudice.

¶ 26 The record discloses that defendant clearly and expressly, on many occasions, professed his innocence and indicated a *desire* for trial. As early as his bond-reduction hearing, defendant advanced an innocence theory, claiming that his passenger Jeffrey Smith, and not defendant, was the shooter. This theory continued through trial, with defendant presenting a witness, Latasha Wheeler, who repudiated her statement given to police after the offense, in which she identified defendant as the shooter, and testified that her now-deceased boyfriend, Smith, was the actual shooter. At sentencing, defendant stated that he "never apologized because he never did nothing to [Jassandra Booker]." Further, defendant never complained about choosing a trial over the State's plea offer until after the appellate court had remanded the matter for consideration under *Krankel*.

¶ 27 While this court, in *Curry*, 178 Ill. 2d at 532, stated that a claim of innocence by a defendant and the presentation of a defense to the charges "does little, by itself, to answer the question of why he refused the plea offer in the first place," here, it is not just defendant's claim and defense of innocence that weighs against his hearing testimony. On the contrary, the record provides insight into defendant's trial tactics, which involved obtaining the assistance of Wheeler to testify in his defense and recant her earlier statement implicating defendant. Further, the evidence at sentencing showed an attempt made by defendant's "friend" to bribe and scare one of the victims, Tankson, in order to obtain his recantation. Therefore, unlike *Curry*, where the case for the defendant was described by this court as not "particularly strong," and by the appellate court herein as "weak," defendant in the case at bar arguably believed, prior to his trial, that he had both a witness to testify to his innocence and one victim who might refuse to testify. *Curry*, 178 Ill. 2d at 532; 2011 IL App (1st) 090110-U, ¶ 24.

¶ 28 Next, while we acknowledge that, similar to *Curry*, 178 Ill. 2d at 533, there was disparity between the mandatory 12-year to 60-year consecutive sentences which defendant faced if convicted of both counts of attempt (first degree murder) and the State's 15-year plea offer, there was also the possibility, however remote, that defendant could receive the minimum 12-year consecutive term. Further, at the *Krankel* hearing, defendant testified that, given the 15-year plea offer and his understanding that his sentences would be concurrent, *i.e.*, that the maximum he could receive was 30 years, he believed he "might as well go to trial." Defendant's statement is confirmed by defense counsel Urban's testimony that defendant was not interested in pleading, but rather "wanted a trial." Therefore, defendant was willing to risk a 30-year sentence and go to trial, rather than plead guilty in exchange for a 15-year sentence. This testimony from both defendant and Urban, combined with the evidence of defendant's persistent belief in the possibility of acquittal at trial, compels us to conclude that defendant's rejection of the proffered plea was *not* based upon counsel's alleged erroneous

advice but, as the State suggests, upon other considerations. See *In re Alvernaz*, 830 P.2d 747, 761 (Cal. 1992) (*en banc*) (no *Strickland* prejudice where the record, including statements from the defendant's attorney, established that the defendant's decision to reject a plea offer was based primarily on his "persistent, strong, and informed hope" of acquittal at trial); *cf. Curry*, 178 Ill. 2d at 532.

¶ 29                                                    CONCLUSION

¶ 30        Here, rather than providing any "independent, objective confirmation that defendant's rejection of the proffered plea was based upon counsel's erroneous advice" (*Curry*, 178 Ill. 2d at 532), defendant's sole, self-serving claim that he otherwise would have been "inclined" to accept the State's plea offer is unsupported, denied by counsel and refuted by the record. Because we find that defendant has failed to make this initial showing, we hold that defendant did not establish the prejudice prong of *Strickland*. Accordingly, we find it unnecessary to examine the additional factors necessary for a finding of prejudice which are set forth in *Frye* and *Cooper*. The circuit court properly rejected defendant's ineffective assistance of counsel claim, and the appellate court erred in reversing defendant's convictions and remanding the cause for the resumption of plea negotiations and a new trial if necessary.

¶ 31        For the reasons set forth above, we reverse the judgment of the appellate court, and affirm the judgment of the circuit court.

¶ 32        Appellate court judgment reversed.

¶ 33        Circuit court judgment affirmed.