2020 IL App (1st) 190597-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

SECOND DIVISION
December 22, 2020

No. 1-19-0597
_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 11-CR-9879 |
| | ) | |
| NIKOLAS GACHO, | ) | The Honorable |
| | ) | William G. Gamboney, |
| Petitioner-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justices Lavin and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held:* Trial court's first-stage summary dismissal of postconviction petition, which alleged ineffective assistance of counsel for failing to inform petitioner of correct sentencing range until day of trial, failing to request a continuance on day of trial, and failing to include a claim in petition for leave to appeal to supreme court, is affirmed.

¶ 2    Petitioner Nikolas Gacho was convicted in a bench trial of attempted first-degree murder for an offense committed in 2010 when he was 17 years old. He was sentenced to 35 years in prison, and his sentence included a mandatory sentencing enhancement of 25 years based on his personal discharge of a firearm that proximately caused great bodily harm, permanent disability, or permanent disfigurement to the victim, Mario Palomino. See 720 ILCS 5/8-4(c)(1)(D) (West

2010). He now appeals from the trial court's first-stage summary dismissal of his *pro se* petition for relief under the Post-Conviction Hearing Act. 725 ILCS 5/122-1 *et seq.* (West 2018). He contends that the trial court erred in summarily dismissing his petition because it presented an arguable claim that he was denied his constitutional right to the effective assistance of counsel in that: (1) his trial counsel did not inform him until the day of trial that he was subject to the mandatory sentencing enhancement of 25 years to life and then refused to request a continuance to allow him to consider the State's 20-year plea offer; and (2) his appellate counsel failed to include, as part of the petition for leave to appeal filed on his behalf in the Illinois Supreme Court, a claim that the mandatory sentencing enhancement imposed on him for an offense committed as a juvenile violated the proportionate penalties clause of the Illinois Constitution. Ill. Const. 1970, art. I, § 11. For the reasons that follow, we affirm the summary dismissal.

¶ 3                                          I. BACKGROUND

¶ 4        The record reflects that on the day the case was set for trial, the following colloquy occurred in court prior to the commencement of the bench trial:

> "MS. D'SOUZA [(ASSISTANT STATE'S ATTORNEY)]: *** The State is making an offer covering this case only of 20 years Illinois Department of Corrections on the attempt murder, which I believe the Defendant is rejecting. He is looking at a minimum of 31 years to natural life if he is convicted on this charge based on the fact that it is charged that the Defendant personally discharged a firearm that caused permanent disfigurement and permanent disability to the victim.
>
> THE COURT: Mr. Gacho, do you understand what the State's offer is?
>
> THE DEFENDANT: Yes, your Honor.

THE COURT: Okay. You understand they are offering you 20 years on the attempt first degree murder, one of the lesser charges. If you are found guilty of one of the counts, Count 4 in that you proximately caused—that you personally discharged a firearm that proximately caused great bodily harm to Mario Palomino or caused permanent disability to Mario Palomino, the absolute minimum you could get would be 31 years. You could get a maximum up to natural life. I just want to make sure you understand.

THE DEFENDANT: I understand, your Honor.

THE COURT: Understanding that, do you reject the offer of 20 years?

THE DEFENDANT: I reject it, your Honor."

The trial court then confirmed that petitioner's waiver of his right to a jury trial was being made knowingly, intelligently, and voluntarily. The case proceeded immediately to a bench trial.

¶ 5       The trial evidence is not at issue in this appeal. In this court's prior order on direct appeal, we summarized the evidence as follows:

"At trial, the evidence established that on June 8, 2010, defendant and Mario Palomino had an argument over the phone about defendant's girlfriend, Jessica Drowns. Later in the evening, after Palomino left a party with Drowns to walk her home, defendant appeared and pulled out a firearm. Palomino began to run away, but defendant fired his weapon three times and hit Palomino once in the middle of his upper back, causing him to fall down. As a result of the gunshot, Palomino became paralyzed from the chest down and suffers from other conditions caused by the gunshot. Defendant presented evidence of previous altercations with Palomino and people associated with him. Defendant testified that when he saw Palomino and Drowns together on the night in question, Palomino made

a motion to his waistband and told defendant 'I got you now.' Thinking Palomino was reaching for a firearm, defendant pulled out his firearm and shot at Palomino three times.

The trial court rejected defendant's assertion of self-defense and found him guilty of attempted first-degree murder. The court subsequently sentenced defendant to 35 years' imprisonment, 10 years for attempted first-degree murder and another 25 years for personally discharging the firearm that proximately caused great bodily harm to Palomino." *People v. Gacho*, 2016 IL App (1st) 140896-U, ¶¶ 3-4.

¶ 6    On direct appeal, petitioner argued that the exclusive jurisdiction provision of the Juvenile Court Act of 1987 (705 ILCS 405/5-120 (West 2010)) was unconstitutional under the eighth amendment of the United States Constitution (U.S. Const., amend. VIII), an argument that this court rejected. *Gacho*, 2016 IL App (1st) 140896-U, ¶¶ 5-15. He also argued that the application of the 25-year mandatory firearm sentencing enhancement (720 ILCS 5/8-4(c)(1)(D) (West 2010)), combined with the requirement of the truth-in-sentencing law that he serve at least 85% of his 35-year-sentence (730 ILCS 5/3-6-3(a)(2)(ii) (West 2010)), prevented the trial court from properly considering his youth and attendant circumstances in determining the appropriate sentence for his crime, and that this rendered his sentence unconstitutional under the eighth amendment and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). *Gacho*, 2016 IL App (1st) 140896-U, ¶¶ 16-22. The court rejected petitioner's argument on this issue. *Id.* ¶¶ 21-22. Finally, the court rejected petitioner's argument that he was entitled to resentencing under the statutory provision that became effective on January 1, 2016, while his direct appeal was pending, providing that when a trial court sentences an offender who was under the age of 18 at the time of the offense, it must consider certain additional factors in mitigation and also has the discretion to decline to impose an otherwise-mandatory sentencing enhancement based

on the offender's discharge of a firearm. *Id.* ¶¶ 23-31 (citing 730 ILCS 5/5-4.5-105 (West 2016)). Petitioner filed a petition for leave to appeal in the Illinois Supreme Court, which was denied. *People v. Gacho*, No. 121344, 94 N.E.3d 630 (Table), 419 Ill. Dec. 761 (Ill. Jan. 18, 2018).

¶ 7         On October 17, 2018, petitioner filed a *pro se* postconviction petition. On January 11, 2019, the trial court entered a written order summarily dismissing the petition upon finding that all claims raised in it were frivolous or patently without merit. The petition raised thirteen claims, only two of which are pertinent to this appeal. Both involve claims that he was denied his constitutional right to the effective assistance of counsel.

¶ 8         In his first claim, petitioner alleged that his trial counsel did not inform him until the day of trial that he was subject to a mandatory sentencing enhancement of 25 years to life. Rather, he asserted, throughout the case until that day, both of his attorneys had informed him that he was facing a sentence of between 6 to 30 years, without mentioning the sentencing enhancement, and they had assured him that because he was a juvenile at the time of the offense he would not receive a sentence of "anything near 30 years." He contended that this incorrect advice led him in late 2012 or early 2013 to reject the State's first offer of 26 years.

¶ 9         His petition asserted that on December 4, 2013, the day of his trial, his attorneys informed him that the State was offering him 20 years in exchange for a guilty plea. They also told him then that the State was seeking a mandatory 25-year-to-life sentencing enhancement and that he was thus facing a sentencing range of 31 years to life instead of 6 to 30 years. After his trial counsel informed him of this, he "asked his attorney(s) to try and get the offer down to 15 years." His attorneys returned and informed him that the State remained at its offer of 20 years. He asked his attorneys to go back a second time and attempt to "get the offer down to 15 years or as close to it as possible." They returned again and informed him that they had spoken to the judge and that the

judge felt 20 years was a fair offer. He asked his attorneys for advice about what to do, and they informed him that they could not help him in making his decision. Petitioner then told his attorneys he would like a continuance to consider the offer and speak to his family, but they told him that it was "not an option" to ask for a continuance on the day they were to start trial. One of his attorneys also said to him that asking for a continuance would undermine his credibility in front of the court. Based on his attorneys' "providing [him] with no useful information or advice and refusing to ask for a continuance," petitioner "refused the 20 year offer and proceeded to trial." He claimed that his trial counsel provided him ineffective assistance by failing to inform him of the correct sentencing range until the day of trial, providing him with no assistance about whether to accept the plea offer, and then refusing to ask for a continuance to allow him to consider the offer and make an informed decision after full consultation with his defense counsel. He claimed that he would have accepted the State's 20-year offer, but for the ineffective assistance of his counsel.

¶ 10       In its written order summarily dismissing petitioner's postconviction petition, the trial court determined that there was no basis in law to find that petitioner's attorneys' performance was unreasonable. The trial court reasoned that, although his attorneys may have stated an incorrect sentencing range at earlier stages, they ultimately provided him with accurate information by the time he had to make his choice about whether to accept the State's offer. Thus, he had received "all the relevant information that is constitutionally required to decide whether to accept or reject the plea offer when he made his choice." The court reasoned that the constitution did not require his counsel to tell him what to do or to persuade him to accept the plea. It further reasoned that petitioner's own conduct belied his assertion that he would have accepted the 20-year offer. Under his own telling, even after being informed of the correct sentencing range, he twice asked his lawyers to counter the State's offer with 15 years. Thus, the court determined, "he had a

meaningful opportunity to consider the offer with correct information," and "his actual decision to go to trial contradicts his conclusory claim that he would have accepted the plea."

¶ 11    The second claim that petitioner raised in his postconviction petition pertinent to this appeal was that he received ineffective assistance from his appellate counsel for not including in his petition for leave to appeal to the Illinois Supreme Court any claim that the imposition of the mandatory 25-year firearm sentencing enhancement was unconstitutional under the eighth amendment or the proportionate penalties clause of the Illinois constitution. He contended that he informed his appellate counsel that he was unwilling to forfeit review of this claim and that the omission of it deprived him of consideration of the issue by the supreme court or federal courts. The petition for leave to appeal was not attached to his postconviction petition.

¶ 12    In rejecting this second claim, the trial court reasoned that petitioner's appellate counsel was not arguably ineffective for failing to include the claim in the petition for leave to appeal. The trial court noted that if the supreme court had granted review, it could have considered the issue in its discretion, as other issues in the petition addressed sentencing and the court could have found the issues intertwined. The trial court further reasoned that it was "entirely speculative" whether petitioner's claim would have succeeded in the Illinois Supreme Court or federal courts.

¶ 13                                II. ANALYSIS

¶ 14    On appeal, petitioner argues that the trial court erred in its first-stage, summary dismissal of his postconviction petition because it set forth a nonfrivolous, arguable claim that his constitutional rights were violated in the proceedings below. The Post-Conviction Hearing Act (725 ILCS 5/122-1(a)(1) (West 2018)) permits a person under criminal sentence to challenge his conviction or sentence by showing that, in the proceedings that resulted in his conviction, there was a substantial denial of his constitutional rights. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). A postconviction

proceeding is a collateral attack on a prior conviction that is limited to constitutional matters that were not and could not have been previously adjudicated. *People v. Morris*, 236 Ill. 2d 345, 354 (2010). The action is commenced by the filing of a petition in the circuit court where the original proceeding occurred. *People v. Tate*, 2012 IL 112214, ¶ 8.

¶ 15    A postconviction proceeding involves three stages. *People v. Johnson*, 2018 IL 122227, ¶ 14. This case is at the first stage, in which the trial court independently reviews the petition without input from the State. *Id.* This stage involves no hearings, arguments, or introduction of evidence. *Id.* ¶ 21. Rather, the trial court reviews the petition to determine whether it "is frivolous or is patently without merit," and the trial court must summarily dismiss that petition if it determines that it meets that standard. 725 ILCS 5/122-2.1(a)(2) (West 2018); see *Tate*, 2012 IL 112214, ¶ 9. A petition should be summarily dismissed under this standard "only if the petition has no arguable basis either in law or in fact." *Hodges*, 234 Ill. 2d at 11-12. "A petition lacks an arguable basis in law when it is grounded in 'an indisputably meritless legal theory,' for example, a legal theory which is completely contradicted by the record." *Morris*, 236 Ill. 2d at 354 (quoting *Hodges*, 234 Ill. 2d at 16). "A petition lacks an arguable basis in fact when it is based on a 'fanciful factual allegation,' which includes allegations that are 'fantastic or delusional' or belied by the record." *Id.* (quoting *Hodges*, 234 Ill. 2d at 16-17). Further, a petition alleging nonfactual and nonspecific assertions that merely amount to conclusions will not survive summary dismissal. *Id.*

¶ 16    In evaluating a petition at the first stage, the trial court must take the allegations as true and construe them liberally. *People v. Brown*, 236 Ill. 2d 175, 184 (2010). Thus, although the petition must provide some facts about the constitutional deprivation alleged, a limited amount of factual detail is sufficient. *Id.* The threshold for a petition to survive the first stage of review is low. *People v. Allen*, 2015 IL 113135, ¶ 24. If a petition alleges sufficient facts to state the gist of a

constitutional claim, even if it lacks legal argument or citations to authority, first-stage dismissal is inappropriate. *Id.* In considering the petition, the trial court may examine the court file of the proceeding that resulted in the conviction, any transcripts of that proceeding, and any action taken by an appellate court in that proceeding. 725 ILCS 5/122-2.1(c) (West 2018). The summary dismissal of a postconviction petition is reviewed *de novo*. *Tate*, 2012 IL 112214, ¶ 10. Also, a reviewing court may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct. *People v. Walker*, 2018 IL App (1st) 160509, ¶ 23.

¶ 17 A petition that is not subject to summary dismissal advances to the second stage of a postconviction action, where counsel may be appointed for an indigent defendant and where the State may answer or move to dismiss the petition. *Tate*, 2012 IL 112214, ¶ 10; see 725 ILCS 5/122-4, 122-5 (West 2018). At the second stage, the trial court must determine whether the petition and any accompanying documentation make "a substantial showing of a constitutional violation." *Tate*, 2012 IL 112214, ¶ 10 (quoting *People v. Edwards*, 197 Ill. 2d 239, 246 (2001)). If no such showing is made, the petition is dismissed. *Id.* If such a showing is made, the petition is advanced to the third stage, at which an evidentiary hearing is conducted. *Id.*; 725 ILCS 5/122-6 (West 2018).

¶ 18 Petitioner's first argument is that he presented an arguable claim that he was denied his constitutional right to effective assistance of counsel, where his trial counsel failed until the day of trial to inform him that he was subject to a mandatory sentencing enhancement of 25 years to natural life if he was found guilty of personally discharging a firearm that proximately caused great bodily harm, permanent injury, or permanent disfigurement to another person. Instead, his counsel led him to believe until that day that he faced a sentencing range of only between 6 and 30 years and that he was unlikely to be sentenced to anything near 30 years because he was a juvenile at the time of the offense. He further argues that ineffectiveness is arguably shown by the fact that

counsel thereafter refused to request a continuance so that petitioner could consider the State's offer in light of his new knowledge of the accurate sentencing range, for fear that counsel would lose credibility with the trial court. Petitioner argues that there is arguably a reasonable probability that he would have accepted the State's offer of 20 years if his trial counsel had advised him of the accurate sentencing range prior to the day of trial or at least requested a continuance so that he had a reasonable time to consider the State's offer after learning of the accurate sentencing range.

¶ 19        A criminal defendant has a constitutional right to the effective assistance of counsel in the trial court. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. The constitutional right to effective assistance of counsel extends to the plea-bargaining process. *People v. Hale*, 2013 IL 113140, ¶ 15. " 'A criminal defendant has the constitutional right to be *reasonably* informed with respect to the direct consequences of accepting or rejecting a plea offer.' " (Emphasis in original.) *Id.* ¶ 16 (quoting *People v. Curry*, 178 Ill. 2d 509, 528 (1997)). "Concomitantly, a criminal defense attorney has the obligation to inform his or her client about the maximum and minimum sentences that can be imposed for the offenses with which the defendant is charged." *Curry*, 178 Ill. 2d at 528. The right to effective assistance of counsel extends to the decision to reject a plea offer, even if the defendant subsequently receives a fair trial. *Id.* at 518.

¶ 20        The familiar two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel in the plea-bargaining context. *Hale*, 2013 IL 113140, ¶ 15. Under that test, to ultimately prevail on a claim of ineffective assistance of counsel, it must be shown that counsel's performance " 'fell below an objective standard of reasonableness' " and that the deficient performance prejudiced the petitioner's defense. *Tate*, 2012 IL 112214, ¶ 19 (quoting *Hodges*, 234 Ill. 2d at 17 (quoting *Strickland*, 466 U.S. at 687-88)). However, a "more lenient formulation" of this standard applies at the first stage of a postconviction action alleging

ineffective assistance of counsel. *Tate*, 2012 IL 112214, ¶¶ 19-20. " 'At the first stage of postconviction proceedings under the Act, a petition alleging ineffective assistance may not be summarily dismissed if (i) it is *arguable* that counsel's performance fell below an objective standard of reasonableness and (ii) it is *arguable* that the defendant was prejudiced.' " (Emphases in original.) *Id.* ¶ 19 (quoting *Hodges*, 234 Ill. 2d at 17).

¶ 21     To establish prejudice, a petitioner must show that there is arguably a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See *Hale*, 2013 IL 113140, ¶ 18. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* "In other words, the defendant must establish that there is a reasonable probability that, absent his attorney's deficient advice, he would have accepted the plea offer." *Id.* This showing of prejudice must encompass more than the postconviction petitioner's own subjective, self-serving testimony. *Id.* Rather, there must be independent, objective confirmation that defendant's rejection of the proffered plea was based upon counsel's erroneous advice and not on other considerations. *Id.* The disparity between the sentence faced and a significantly shorter plea offer can be considered supportive of a claim of prejudice. *Id.*

¶ 22     In support of his argument that his trial counsel was ineffective for failing to accurately advise him of the 25-year sentencing enhancement until the day of trial, after having previously advised him that he faced a sentencing range of 6 to 30 years and was unlikely to be sentenced to anywhere near 30 years because he was a juvenile, petitioner cites *People v. Barghouti*, 2013 IL App (1st) 112373, and *People v. Williams*, 2016 IL App (4th) 140502.

¶ 23     In *Barghouti*, this court reversed a trial court's first-stage dismissal of a postconviction petition alleging ineffective assistance of counsel. *Barghouti*, 2013 IL App (1st) 112373, ¶ 1. The petitioner, who was charged with aggravated criminal sexual assault and aggravated kidnapping,

had rejected the State's 12-year plea offer and proceeded to trial, where he was convicted and then sentenced to 35 years in prison. *Id.* ¶¶ 3-8. The postconviction petition alleged that during plea negotiations, counsel failed to advise the petitioner that he faced a possible prison term of 6 to 60 years if found guilty, but instead counsel had advised him that he would be eligible for probation if convicted since he had no criminal record. *Id.* ¶ 8. The petition further alleged that the petitioner had rejected the State's offer because of this erroneous advice and that if he had been aware of the maximum sentencing range and had not been erroneously advised that he would receive probation, he would have accepted the State's plea offer of 12 years. *Id.* After noting that a criminal defense attorney had the obligation to advise a client about the maximum and minimum sentences that could be imposed for the charged offenses and that the failure to do so is objectively unreasonable, this court held that the petition had adequately alleged facts showing that, arguably, counsel had been ineffective. *Id.* ¶¶ 17-18 (citing *Curry*, 178 Ill. 2d at 528-29). The court also held that arguable prejudice had been shown through the petitioner's allegation that he would have accepted the plea bargain if he had known the sentencing range applicable to the crimes charged. *Id.* ¶ 18.

¶ 24        In *Williams*, the court reversed a trial court's second-stage dismissal upon a finding that the postconviction petition alleged a substantial showing of a constitutional violation. *Williams*, 2016 IL App (4th) 140502, ¶¶ 1-2. The petitioner, who was charged with attempted first-degree murder, unlawful use of a weapon by a felon (UUWF), and attempted armed robbery, had rejected the State's 18-year plea offer and proceeded to trial, where he was found guilty and later sentenced to 45 years in prison. *Id.* ¶ 1. He alleged in his postconviction petition that his counsel had been ineffective during guilty-plea negotiations by informing him that he faced a sentence of up to 30 years at 50% on the attempted first-degree murder charge, 5 years on the UUWF charge, and between 4 and 15 years at 50% on the attempted armed robbery charge, by failing to tell him that

he could face up to 30 years on the attempted armed robbery charge, by failing to tell him the sentences could be consecutive based on his prior record, and by failing to tell him that he was subject to serving 85% of his sentence on the attempted first-degree murder charge. *Id.* ¶ 6. His petition further alleged that the advice he received caused him to reject the State's guilty-plea offer of 18 years and that if he had known the information his attorney failed to tell him, he would have accepted the State's offer. *Id.* The court noted that the allegations of the petition were uncontradicted by the record and therefore must be taken as true, as the trial court had not conducted a pretrial inquiry to make a record of the guilty-plea negotiations. *Id.* ¶ 44.

¶ 25　　　　The court engaged in a lengthy discussion of the pretrial inquiries that it recommended trial courts undertake on the record "to ensure compliance with the defendant's constitutional rights." *Id.* ¶ 36. It recommended that trial courts conduct an inquiry to address the following matters:

> "• Ensure that the prosecutor, defense attorney, *and the defendant* all understand the applicable minimum and maximum sentences the defendant is facing on the State's charges if he is convicted at trial, which should include a discussion of any sentencing enhancements (such as extended terms), any mandatory or discretionary consecutive sentencing options, and any truth-in-sentencing considerations.

> • Inquire of the State whether it entered into negotiations with defense counsel, and if the State made a guilty-plea offer to defense counsel, the exact nature of the offer (including expiration dates, if any).

> • Confirm with defense counsel the terms of the State's stated guilty-plea offer *and* whether counsel conveyed that offer to the defendant.

> • Confirm personally with the defendant his understanding of the State's guilty-plea offer as conveyed by his counsel.

• Ensure the defendant's understanding that the ultimate decision whether to accept or reject the State's offer rests with the defendant after consultation with his counsel.

• Confirm the defendant's decision to reject the State's guilty-plea offer.

• Confirm that given his understanding of the minimum and maximum sentences that the trial court can impose if convicted of the State's current charges, the defendant persists with his decision regarding the State's guilty-plea offer.

• Admonish the defendant that although he should consult with his counsel and consider counsel's advice, the decision whether to (1) plead guilty or not guilty and (2) have a jury trial or a bench trial is ultimately the defendant's decision to make." (Emphases in original.) *Id.*

The court stated that conducting such an inquiry would "allow for the efficient adjudication of any collateral challenges at the first stage of the postconviction proceeding and, by extension, save time and limit the expenditure of scarce judicial resources." *Id.*

¶ 26    We conclude that neither *Barghouti* nor *Williams* assists petitioner in demonstrating an arguable claim of ineffective assistance of counsel in this case. The key distinction is that in both of those cases, the petitioners alleged that, as of the time they were considering and ultimately rejected the State's guilty-plea offers, they were operating under a misunderstanding based on their attorneys having provided them with inaccurate information about the sentences they faced, which led them to reject the plea offer and proceed to trial. *Barghouti*, 2013 IL App (1st) 112373, ¶ 8; *Williams*, 2016 IL App (4th) 140502, ¶ 6. Here, by contrast, there is no dispute that petitioner's attorneys had provided him with accurate information about the sentence he faced as of the time he was presented with, considered, and ultimately rejected the State's 20-year guilty-plea offer. This fact is confirmed not only by the allegations of the petition itself, but also by the fact that the

trial court here conducted the kind of pretrial inquiry recommended in *Williams*. The trial court confirmed on the record that defendant understood that the State was offering him 20 years on the charge of attempted first-degree murder and that, if he was found guilty on the count alleging that he personally discharged a firearm that proximately caused great bodily harm or permanent disability to Palomino, he faced a minimum sentence of 31 years and a maximum sentence of natural life. The trial court confirmed that, with that understanding, petitioner wished to reject the State's offer of 20 years. We note that it is "well established that admonishments by the circuit court can cure prejudice to a defendant resulting from counsel's incorrect advice." *People v. Valdez*, 2016 IL 119860, ¶ 31.

¶ 27 Given that a trial court's admonishments can cure prejudice even where an attorney has given incorrect advice, we find nothing in *Barghouti* or *Williams* to suggest that a criminal defendant whose counsel has provided him or her with accurate sentencing information by the time he or she is considering and ultimately decides whether to accept or reject a guilty-plea offer has received ineffective assistance of counsel, merely because counsel had provided incorrect sentencing information at an earlier point in this case. We thus agree with the trial court's assessment that, with respect to information about the potential sentence he faced, petitioner's attorneys had provided him with "all the relevant information that is constitutionally required to decide whether to accept or reject the plea offer when he made his choice."

¶ 28 Petitioner also argues that he presented a claim that his counsel was arguably ineffective for refusing to request a continuance to allow him to more fully consider the State's 20-year offer in light of the accurate sentencing information that he had been provided. As support for the contention that such conduct can amount to ineffective assistance, petitioner cites *People v. Minter*, 2015 IL App (1st) 120958, *United States v. Mota*, 685 F.3d 644 (7th Cir. 2012), and *People v.*

*Gunartt*, 218 Ill. App. 3d 752 (1991). Of these cases, only *Gunartt* involved a claim of ineffective assistance of counsel. In *Minter*, the issue was whether a trial court had abused its discretion by failing *sua sponte* to order a continuance to allow defense counsel to secure the appearance of a witness to perfect an impeachment, where no continuance was requested by counsel. *Minter*, 2015 IL App (1st) 120958, ¶¶ 69-75. Petitioner here cites the court's statement, in holding that the trial court had no obligation *sua sponte* to order a continuance, that it was " 'incumbent on defense counsel to request a continuance' " to secure presence of the witness. See *id.* ¶ 76. In *Mota*, the issue was whether the defendant was entitled to a new trial where defense counsel discovered at the start of trial that exculpatory evidence had been withheld but was nevertheless fully able to present the evidence to the jury. *Mota*, 685 F.3d at 648-49. In holding that the defendant was not entitled to a new trial, the court rejected the argument that the late revelation of the exculpatory evidence gave the defendant insufficient time to investigate it. *Id.* at 649. The court noted that defendant's counsel had not requested a continuance for further investigation and stated that "if his counsel needed more time, a request for a continuance was the proper course of action." *Id.*

¶ 29    In *Gunartt*, the court held that a defendant convicted of aggravated criminal sexual assault had received ineffective assistance of trial counsel that deprived him of a fair trial where, among a variety of ways in which it found counsel had failed to investigate and develop available defenses, counsel had "proceeded immediately to trial without requesting a continuance or even a brief recess to examine and evaluate" documents tendered by the prosecution for the first time on the morning defendant's trial began. *Gunartt*, 218 Ill. App. 3d at 762. It was shown that, had counsel obtained these documents prior to trial or requested the time to review them when they were turned over to him, he would have learned information that would have led a reasonable attorney to additional documents showing that the victim, her brother, and her mother had all given

statements about the incident at issue that differed from their trial testimony and to other evidence favorable to the defendant's case. *Id.*

¶ 30    We find that none of the cases cited by petitioner support the conclusion that an attorney's refusal to request a continuance on the day of trial, solely to allow a client to have additional time to consider a plea offer, is arguably conduct that falls below an objective standard of reasonableness to the prejudice of the defendant. Each of the cases cited by petitioner involved the need for a continuance for some purpose related to investigating or supporting a defense at trial: securing the presence of an impeachment witness, investigating exculpatory evidence discovered at the start of trial, or reviewing documents tendered on the day of trial that would have led the attorney to evidence favorable to his client's case. None of these cases suggest that an attorney is required to request a continuance of the trial for a purpose unrelated to the trial itself, such as allowing the client more time to consider a plea offer. See *United States v. Cronic*, 466 U.S. 648, 658 (1984) ("Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated."). We believe that this is true regardless of whether the client was previously operating under a misunderstanding about the potential sentence he or she faced if convicted.

¶ 31    Furthermore, we agree with the trial court that petitioner has not shown that his decision to reject the guilty plea was caused by his attorneys' misinforming him of the sentencing range he faced prior to the day of trial and then refusing to request a continuance to allow him more time to consider the State's offer. His petition discloses that even after being informed of the correct sentencing range on the day of trial, he directed his attorneys twice to attempt to obtain an offer from the State of 15 years or as close to that as possible, which they attempted to do. Thus, even after learning that the State was holding firm to its 20-year offer and that the trial judge thought it

was fair, he nevertheless decided to reject it and proceed to trial. Further, during the trial court's pretrial inquiry into petitioner's understanding of the plea offer and his desire to reject it, petitioner did not suggest to the trial court that he wanted additional time to consider the State's offer or otherwise equivocate about his desire to reject the State's 20-year offer. See *People v. Mujica*, 2016 IL App (2d) 140435, ¶ 19. These facts contradict petitioner's own " 'subjective, self-serving' " assertion after-the-fact that he would have accepted the State's offer of 20 years if only his attorneys had obtained more time for him to consider it. See *Hale*, 2013 IL 113140, ¶ 18. Thus, petitioner has failed to show arguable prejudice.

¶ 32    For these reasons, we hold that the trial court correctly determined that petitioner's claim that he was denied the constitutional right to effective assistance of trial counsel was frivolous or patently without merit. The trial court therefore did not err in summarily dismissing this claim.

¶ 33    Petitioner's second contention on appeal is that his postconviction petition presented an arguable claim that he was deprived of his constitutional right to effective assistance of counsel because his appellate counsel failed to include, as part of the petition for leave to appeal filed on his behalf in the Illinois Supreme Court, a claim that imposition of the 25-year mandatory firearm sentencing enhancement imposed on him for an offense committed as a juvenile violated the proportionate penalties clause of the Illinois Constitution. Ill. Const. 1970, art. I, § 11. As stated above, on direct appeal this court rejected petitioner's argument that his sentence was unconstitutional under the proportionate penalties clause or the eighth amendment to the United States Constitution (U.S. Const., amend. VIII). *Gacho*, 2016 IL App (1st) 140896-U, ¶¶ 21-22. Following this court's decision, petitioner's appellate counsel filed a petition for leave to appeal with the Illinois Supreme Court, but, according to the postconviction petition, counsel did not argue this claim as grounds for taking the appeal. The supreme court denied the petition for leave

to appeal. Petitioner claims that his appellate counsel's omission of this meritorious claim from the petition for leave to appeal constituted ineffective assistance of appellate counsel.

¶ 34    Although this is not the basis for dismissal relied upon by the trial court or the State, this court has previously rejected the contention that a criminal defendant can suffer a deprivation of the constitutional right to effective assistance of counsel where his or her appellate counsel fails to include a particular claim in a petition for leave to appeal filed in the Illinois Supreme Court. *People v. Stephens*, 2012 IL App (1st) 110296, ¶¶ 115-118. In so holding, this court recognized that a criminal defendant has no constitutional right to appointed counsel to obtain discretionary appellate review. *Id.* ¶ 117 (citing *In re Adoption of L.T.M.*, 214 Ill. 2d 60, 72 (2005) (citing *Ross v. Moffitt*, 417 U.S. 600, 619 (1974))). Because no such constitutional right exists, a criminal defendant cannot be deprived of any constitutional right to the effective assistance of counsel when his or her appellate counsel fails to seek discretionary review. *Id.* (citing *People v. James*, 111 Ill. 2d 283, 291 (1986)). "Thus, even if appellate counsel's performance in preparing the application falls below minimum standards of performance, there is no deprivation of the constitutional right to counsel because there is no such right to counsel in filing the application." *Id.* (citing *Chalk v. Kuhlmann*, 311 F.3d 525, 529 (2d Cir. 2002)).

¶ 35    In this case, as in *Stephens*, petitioner merely had the ability to petition the supreme court to grant discretionary review of his appeal. See Ill. S. Ct. R. 315(a) (eff. Mar. 15, 2016). As such, he had no constitutional right to counsel in filing his petition for leave to appeal. *Stephens*, 2012 IL App (1st) 110296, ¶ 118. Because no such constitutional right to counsel existed, petitioner could not suffer a constitutional deprivation of the right to effective assistance of counsel through the failure of his appellate counsel to include claims in his petition for leave to appeal. See *id.*

Accordingly, his postconviction petition presents no arguable claim of ineffective assistance of appellate counsel and was properly dismissed as being frivolous or patently without merit.

¶ 36                                              III. CONCLUSION

¶ 37         For the foregoing reasons, the trial court's summary dismissal of petitioner's postconviction petition is affirmed.

¶ 38         Affirmed.