2021 IL App (1st) 182098-U

No. 1-18-2098

Order filed January 15, 2021

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1)

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 10 CR 7622 |
| | ) | |
| KEYANNA RICHMOND, | ) | Honorable |
| | ) | Geraldine D'Souza, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Delort and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court's first-stage dismissal of defendant's *pro se* postconviction petition is reversed where the petition alleges the gist of a claim that trial counsel was ineffective during plea bargaining.

¶ 2    Defendant Keyanna Richmond appeals from the circuit court's first-stage dismissal of her *pro se* petition under the Post-Conviction Hearing (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)), which, in relevant part, alleged ineffective assistance of counsel at plea bargaining. Specifically, defendant claimed that she would have accepted the State's plea offer of a six-year sentence but

for counsel's representation that she would receive probation after trial. The circuit court summarily dismissed the petition, finding that the claim was forfeited because defendant did not raise it on direct appeal. We reverse.[1]

¶ 3    Following a bench trial, defendant was found guilty of three counts of heinous battery (720 ILCS 5/12-4.1(a) (West 2010)) and sentenced to one nine-year term of imprisonment to run consecutively to two concurrent six-year terms of imprisonment.

¶ 4    Defendant and her sister, Janet Richmond, were each charged in a 26-count indictment following an incident on March 24, 2010, in which they were alleged to have used sulfuric acid to injure three victims: their cousins Suprisa Villa-Gomez and Katina Villa-Gomez, and Sally Villa-Gomez, Suprisa and Katina's mother.[2] The State proceeded on one count of heinous battery and one count of aggravated battery as to each victim.[3]

¶ 5    At a pretrial proceeding on August 20, 2013, counsel for Janet appeared for both Janet and defendant and informed the court that the State had made a plea offer to both Janet and defendant, which they had rejected. Defendant's trial counsel was not present in court. The prosecutor stated that the offer to defendant and Janet was a recommendation of a six-year sentence on heinous battery. The court informed both defendant and Janet that they were charged with Class X offenses

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order stating with specificity why no substantial question is presented.

[2] Because defendant, Janet Richmond, and another relevant individual, Tracey Richmond, share the same last name, we refer to them by their first names. We will refer to the victims by their first names because they also have last names in common.

[3] Defendant and Janet were tried simultaneously in a joint bench trial. Janet is not a party to this appeal.

carrying a sentencing range of "6 to 30 years," meaning the State's offer was for the "minimum."[4] In response to questions posed by the court to both defendant and Janet, defedant affirmed that she understood this, and that it was her decision to refuse the offer after speaking to her attorney. Defendant further affirmed that she understood she could face a longer prison term if she were found guilty following trial.

¶ 6     At trial, Suprisa testified that in March 2010, she lived on the 1300 block of Kennedy Lane in Ford Heights, Illinois, with Katina and Sally. On March 24, 2010, around 2 p.m., Suprisa exchanged phone calls with defendant and Janet and Tracey Richmond (Suprisa's counsins), during which defendant and Janet accused Suprisa of "telling people their mother was in jail."

¶ 7     Around 4:30 p.m., Suprisa, Katina, and Sally were in their living room when they heard someone tell them to come outside. Suprisa looked outside and saw the vehicle defendant, Janet, and Tracey typically drove. Suprisa exited and saw Tracey holding "something in a sock," which he swung at her. She and Tracey fought. At some point, defendant "threw something in a bottle" at Suprisa, and the two also fought. During the fight, Suprisa felt a "burning sensation" on her face. She stopped fighting, entered the house, and looked in the mirror, where she saw the skin on her face bubbling and also felt pain in her back. Katina and Sally were both outside when defendant threw the liquid on Suprisa.

¶ 8     Suprisa went to the hospital, where she underwent burn treatments, including a skin graft on her back. Following the procedures, she experienced "very sharp" and "continuous" pain. She

---

[4] We note that the maximum sentence under the heinous battery statute was 45 years at this time, not 30 years as the trial court indicated. See 720 ILCS 5/12-4.1(b) (West 2010). That error, however, is not determinative of the issue in this appeal.

stayed in the hospital for three weeks and needed outpatient care, including physical therapy, following discharge. Suprisa had scarring on her face and under her left arm from the burns.

¶ 9    Sally testified that on March 24, 2010, she exited her home around 4 p.m. to stop the fighting. Janet approached Sally and threw the contents of a bottle on Sally's face, causing her face to burn. She also felt burning on her arms. While outside, Sally saw defendant pour the contents of a bottle on Suprisa's back. Sally heard Katina complain of burning as well, but did not see Katina in a physical altercation. Sally went to the hospital, received treatment, and was discharged hours later. She had scars on her arms and face from the incident.

¶ 10    Katina testified that immediately prior to the incident, she heard a vehicle's horn and saw defendant "out of the sunroof [saying] come outside b***." Katina also saw Janet and Tracey with defendant. Suprisa exited the house despite Katina's efforts to restrain her. Katina followed Suprisa, and saw her fight with Tracey, then defendant. Shortly thereafter, Katina heard Sally scream. Katina and Sally went back into the house, and Katina realized that she was injured. She felt burning on her right arm, stomach, and right leg, and saw her clothes "ripping." An ambulance took Katina to the hospital, where she showered and was discharged. The burns left scars on her arm and caused her pain and itching for a "month or two."

¶ 11    Cook County Sheriff's Police Investigator Ronald Sachtleben testified that he recovered scissors, two socks containing pebbles, a broken glass bottle containing an unknown liquid, and a 32-ounce bottle of liquid drain cleaner from the scene. He also took samples of liquid on the ground that had an "ascitic [*sic*]" scent. Sachtleben photographed the victims and their clothing at the hospital, including Suprisa's clothing, which he saw actively dissolving. He identified People's

Exhibit No. 12 as two cans containing the contents of the drain cleaner bottle, which he described as a "solution" of "93.2 percent spheric acid" that was an "airborne hazard if opened."

¶ 12    Alan Osaba, a forensic scientist for the Illinois State Police, testified that he tested the liquid recovered from the scene and determined it was sulfuric acid. He also found sulfuric acid residue on Suprisa's clothing.

¶ 13    Kathy Supple, a nurse practitioner, testified that she treated Suprisa at Loyola Medical Center. Suprisa was admitted on March 24, 2010, with a burn on her left arm, second degree burns on her face, right arm, and right thigh, and a third degree burn on her back. Suprisa required surgical procedures, specifically "a debridement and split thickness skin grafts," and was not discharged until April 1, 2010. Supple explained that victims who suffer third degree burns lose feeling in the affected area because the "nerve endings are burnt off."

¶ 14    Detective Lester Rogers testified that he interviewed defendant at a hospital on March 24, 2010, around 8:30 p.m. Rogers gave defendant her *Miranda* rights. Defendant agreed to speak to Rogers, then stated that she, Janet, and Tracey went to the victims' house to fight, and brought two socks filled with rocks and a "bottle of acid plumbing." Defendant threw the bottle at Suprisa during the ensuing altercation, but defendant did not know how the "bottle came open." The liquid also contacted defendant's arm. Defendant wore a brown jacket and brown-striped shirt during the incident.

¶ 15    Cook County Sheriff's Police Investigator Patrick Julian testified that on March 25, 2010, he recovered a brown jacket and a brown-striped shirt that "had what appear[ed] to be burns on them" from a garbage can outside of defendant and Janet's home.

¶ 16    The court granted defendant's motion for a directed verdict as to one count of aggravated battery against Suprisa and denied the motion as to the remaining counts.

¶ 17    After closing arguments, the court found defendant guilty on all remaining counts and denied defendant's motion for a new trial. Following a sentencing hearing, the court found that Suprisa suffered severe bodily harm, while Katina and Sally did not. The court sentenced defendant to nine years' imprisonment for heinous battery against Suprisa, and two concurrent terms of six years' imprisonment for heinous battery against Katina and Sally, respectively, with the nine-year term to run consecutive to the concurrent six-year terms. Defendant did not file a motion to reconsider sentence.

¶ 18    Defendant appealed, arguing that her sentence was excessive, that she was entitled to a new sentencing hearing pursuant to section 5-4.5-105 of the Uniform Code of Corrections (730 ILCS 5/5-4.5-105 (West 2016)), and an equal protection violation. We affirmed. *People v. Richmond*, 2017 IL App (1st) 1151207-U.

¶ 19    On June 27, 2018, defendant filed a *pro se* petition pursuant to the Act. In pertinent part, defendant alleged ineffective assistance of counsel during plea bargaining, specifically that counsel advised her to reject a plea offer of six years for heinous battery prior to trial and promised she would "receive probation" after trial. She further alleged that counsel manipulated her to proceed to trial although she wanted to accept the "plea of the minimum." Had she been "intelligently made aware of her options and not manipulated by counsel," she would have accepted the State's offer.

¶ 20    Defendant attached her affidavit, which read,

"My attorney promised me probation if I let him take me to trail [*sic*] and argue my case he would win. I didn't want to go to trail [*sic*] but he told me to. I wanted to accept the six years the State offer[ed] but he said no."

¶ 21 On August 3, 2018, the circuit court summarily dismissed defendant's petition, stating in open court that, "All claims could have been raised on appeal."

¶ 22 On appeal, defendant argues that the circuit court erred by dismissing her petition because it set forth an arguable claim for ineffective assistance during plea bargaining based on counsel providing erroneous legal information which caused defendant to reject the State's offer.

¶ 23 The Act provides a method for a criminal defendant to challenge a conviction on the grounds that it violated her constitutional rights. *People v. Custer*, 2019 IL 123339, ¶ 29. A petition filed pursuant to the Act proceeds in three stages. *Id.* At the first stage, a defendant need only allege sufficient facts to state the gist of a constitutional claim. *People v. Allen*, 2015 IL 113135, ¶ 24. The circuit court does not determine the merits of a defendant's claims at the first stage, only whether the claims have an arguable basis in law or fact. *Id.* ¶ 25. If the defendant does not meet this burden, the circuit court may summarily dismiss the petition on the grounds that it is frivolous or patently without merit. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). Summary dismissal of a postconviction petition is reviewed *de novo*. *People v. Boykins*, 2017 IL 121365, ¶ 9.

¶ 24 A criminal defendant has a constitutional right to effective assistance at trial. *Strickland v. Washington*, 466 U.S. 668 (1984). In order to establish a claim for ineffective assistance, a defendant must demonstrate that counsel's representation was deficient and that the defendant suffered prejudice by virtue of counsel's deficient conduct. *People v. Hodges*, 234 Ill. 2d 1, 17

(2009). At the first stage of postconviction proceedings, the defendant need only demonstrate arguable deficiency and arguable prejudice. *Id.*

¶ 25 Additionally, a defendant is entitled to effective assistance of counsel during plea bargaining. *People v. Hale*, 2013 IL 113140, ¶ 16. To establish prejudice in this context, a defendant must demonstrate "a reasonable probability that, absent his attorney's deficient advice, he would have accepted the plea offer." *Id.* ¶ 18. In making this showing, a defendant must establish a reasonable probability that "the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it," and "the end result of the criminal process would have been more favorable by reason of a plea." *Missouri v. Frye*, 566 U.S. 134, 147 (2012). A defendant must also provide objective evidence that he rejected the plea based on his counsel's advice, and not other considerations. *Hale*, 2013 IL 113140, ¶ 18. "The disparity between the sentence a defendant faced and a significantly shorter plea offer can be considered supportive of a defendant's claim of prejudice." *Id.*

¶ 26 Here, defendant's petition alleged that absent counsel's advice, she would have accepted the State's offer of six years for heinous battery, the minimum sentence available. See 720 ILCS 5/12-4.1(a), (b) (West 2010). The petition further alleged that counsel manipulated her by promising she would receive probation after trial. Defendant attached her affidavit to the petition, in which she averred that she wanted to accept the plea offer, and only agreed to trial because of counsel's advice regarding probation.

¶ 27 The record shows that the State's offer was discussed in court on August 20, 2013. During this proceeding, the circuit court admonished defendant that six years was the "minimum" she

could be sentenced to following trial. Defendant affirmed that she understood this, and had rejected the offer on her own accord following consultation with counsel.

¶ 28    Preliminarily, we note that the circuit court in dismissing the petition concluded that defendant forfeited her ineffectiveness claim because she failed to raise it on direct appeal. We disagree. Defendant's claim is based in part on conversations with her counsel that were not matters of record on direct appeal. Accordingly, this claim was not previously available to defendant, and she is not barred from raising it here. See *People v. Mujica*, 2016 IL App (2d) 140435, ¶ 13 (citing *People v. Munson*, 206 Ill. 2d 104, 118 (2002)). This is not ground for automatic reversal, however, because we may affirm the ruling on any basis supported by the record. See *People v. Walker*, 2018 IL App (1st) 160509, ¶ 23.

¶ 29    Based on our review of the record and defendant's petition, we find that defendant alleged sufficient facts to establish the gist of a claim for ineffective assistance of counsel at plea bargaining. First, defendant's petition sufficiently alleges arguably deficient conduct by her counsel. Defense counsel has an obligation during plea bargaining to accurately inform the client "of the direct consequences of accepting or rejecting a plea offer." See *People v. Harvey*, 366 Ill. App. 3d 910, 918 (2006). Here, defendant's petition alleges that her counsel erroneously promised defendant that she could receive probation if found guilty following trial, which under the circumstances would constitute a failure by counsel to accurately inform defendant of the consequences of her decision.

¶ 30    Second, defendant's petition alleges sufficient facts to show arguable prejudice at the first stage of review. Defendant's petition and affidavit alleged that she would have accepted the six-year offer, a significantly shorter sentence than she ultimately received, if not for counsel's

conduct. The State argues that the trial court cured any harm from counsel's allegedly erroneous advice through its admonitions regarding defendant's rejected plea offer on August 20, 2013, where the court admonished defendant that the State's offer constituted the minimum sentence available. Defendant affirmed she understood this, and further affirmed that she decided to reject the offer on her own accord after discussing it with her attorney. But while we agree that this presents a factual hurdle for defendant to clear at the later stages of postconviction review, this record does not conclusively rebut defendant's allegation that counsel misinformed her of probation's availability such that summary dismissal was warranted. Rather, at the first stage, we must accept her allegations that counsel promised her probation as a potential sentence following trial, and that she accepted and relied on this representation.

¶ 31    Similarly, the State's argument that defendant did not sufficiently allege facts to objectively corroborate that she would have accepted the plea offer absent counsel's deficient advice is better suited to resolution at a later stage of postconviction proceedings. At the first stage, we have recognized that it may be unrealistic to expect a defendant to procure an affidavit from counsel that addresses the substance of an ineffective assistance claim. See *People v. Barghouti*, 2013 IL App 1st 112373, ¶ 16. Notwithstanding, objective corroboration can be shown through evidence that the sentence a defendant ultimately received was significantly harsher than the pretrial offer. *Hale*, 2013 IL 113140, ¶ 18. Such evidence is arguably present here because defendant's 15-year sentence is more than double the State's six-year offer. The circumstances of the rejected plea offer do not show that the plea would have been cancelled by the State or rejected by the court, as the court made no indication it would not enter the plea at the proceedings on August 20, 2013, nor did the State suggest it would revoke the offer.

¶ 32     The State also argues that defendant's petition only alleged that counsel told her they would "win" at trial and that she would receive "probation," and thus was contradictory and insufficient to state a claim for ineffective assistance at plea bargaining. This argument fails because the State's interpretation is inappropriately narrow at the first stage of postconviction review. See *Hodges*, 234 Ill. 2d at 9 (A *pro se* postconviction petition can state the gist of a claim even without "formal legal arguments or citation to legal authority."). Defendant's petition alleges that she wanted to accept the State's plea offer, but counsel convinced her that she should decline it because she would receive probation following trial. Based on the record, these allegations are sufficient for defendant to state a first stage claim for ineffective assistance of counsel at plea bargaining.

¶ 33     For the above reasons, the circuit court's order is reversed, and the case is remanded for second stage proceedings.

¶ 34     Reversed and remanded.