NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 170847-U

NOS. 4-17-0847, 4-17-0848 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 20, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| EARL D. NAWLS, | ) | Nos. 10CF808 |
| Defendant-Appellant. | ) | 10CF940 |
| | ) | |
| | ) | Honorable |
| | ) | James R. Coryell, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court. Justices Knecht and Harris concurred in the judgment.

**ORDER**

¶ 1   *Held:*   The appellate court affirmed the trial court's judgment because defendant did not receive ineffective of counsel in that he suffered no prejudice.

¶ 2         In May 2011, defendant, Earl D. Nawls, was sentenced to 15 years in prison for unlawful possession of a controlled substance with intent to deliver within 1000 feet of school property and a concurrent sentence of 4 years in prison for unlawful possession of cannabis with intent to deliver in Macon County case No. 10-CF-940 (hereinafter, case No. 10-CF-940). On that same date, defendant pleaded guilty to driving while license revoked in Macon County case No. 10-CF-808 (hereinafter, case No. 10-CF-808) and was sentenced to a two-year term to run consecutively to the sentence in case No. 10-CF-940.

¶ 3         In May 2013, defendant *pro se* filed a postconviction petition in which he alleged that he was denied effective assistance of counsel when his trial counsel failed to inform him that

his sentences in case Nos. 10-CF-940 and 10-CF-808 would have to be served consecutively.

¶ 4        In October 2017, following a third-stage evidentiary hearing, the trial court denied the petition.

¶ 5        Defendant appeals, arguing the trial court erred by denying defendant's postconviction petition. We disagree and affirm.

¶ 6                                I. BACKGROUND

¶ 7                                A. The Charges

¶ 8        In May 2010, the State charged defendant in case No. 10-CF-808 with (1) driving while license revoked (625 ILCS 5/6-303(d-3) (West 2008)), a Class 4 felony, and (2) unlawful possession of cannabis (720 ILCS 550/4(a) (West 2008)), a Class C misdemeanor (hereinafter, "the driving case").

¶ 9        In June 2010, the State charged defendant in case No. 10-CF-940 with (1) unlawful possession of a controlled substance with intent to deliver within 1000 feet of school property with a prior conviction (720 ILCS 570/407(b)(1) (West 2008)), a Class X felony, (2) unlawful possession of a controlled substance with a prior unlawful possession of controlled substance with intent to deliver conviction (720 ILCS 570/402(c) (West 2008)), a Class 4 felony, (3) unlawful possession of cannabis with intent to deliver (720 ILCS 550/5(d) (West 2008)), a Class 3 felony, (4) unlawful possession of cannabis with a prior unlawful possession of cannabis with intent to deliver conviction (720 ILCS 550/4(d) (West 2008)), a Class 3 felony, and (5) unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2008)), a Class 2 felony (hereinafter, "the drug case").

¶ 10                            B. The Trial and Sentencing

¶ 11        In March 2011, the trial court conducted defendant's jury trial in the drug case.

Meanwhile, the driving case was continued until after that trial. Prior to trial in the drug case, the count for unlawful possession of a weapon by a felon was severed from the remaining four counts and later dismissed. The jury ultimately found defendant guilty of (1) unlawful possession of cannabis with intent to deliver and (2) unlawful possession of a controlled substance with intent to deliver while within 1000 feet of school property. Because the other charges were lesser included offenses, the jury did not return a guilty verdict for them.

¶ 12        In May 2011, defendant appeared for sentencing in the drug case and to plead guilty in the driving case. Defendant first pled guilty to driving while license revoked in the driving case, and, in exchange, the State dismissed the charge for possession of cannabis. Defendant was admonished that the sentences in the driving case and the drug case would be mandatorily consecutive. In the drug case, the trial court sentenced defendant to 15 years in prison for unlawful possession of cocaine with intent to deliver, to be served concurrently with a 4-year sentence for unlawful possession of cannabis. In the driving case, the trial court sentenced defendant to two years in prison for driving while license revoked, to be served consecutively to his other sentences.

¶ 13                                C. Appeal

¶ 14        Defendant appealed the drug case, and this court affirmed defendant's conviction but remanded the case to the trial court to modify its sentencing order to include presentence credit. *People v. Nawls*, 2013 IL App (4th) 110841-U, ¶ 3.

¶ 15                        D. The Postconviction Petition

¶ 16        In May 2013, defendant *pro se* filed a postconviction petition asserting ineffective assistance of counsel in that his counsel (1) did not advise him that he was subject to mandatory consecutive sentences if he did not plead guilty and (2) failed to communicate offers to him. He claimed he did not know he had to accept the State's pretrial offer to avoid a consecutive sentence.

In October 2017, the trial court conducted an evidentiary hearing.

¶ 17                                    1. *Defendant's Testimony*

¶ 18            Defendant testified that Karen Root, his defense counsel in both cases, sent him a letter that the State was offering a deal of eight years in prison in exchange for his pleading guilty to a Class 1 felony in the drug case. He explained that he rejected the offer because he thought he could get a better deal. In the hallway on the morning of trial, the State offered to cap defendant's sentence in the drug case at eight years and dismiss the driving case. Defendant testified that in response to that offer, he said, "I told her [defense counsel] I didn't want to go to trial; see if they can offer me probation. She told me they wasn't [*sic*] willing to do the probation." Defendant testified that he believed if he accepted the offer with a cap of eight years, he would probably get eight years, but if he managed to be found guilty only of possession at trial, he would get six years. Defendant then decided to go to trial and hoped to get six years in prison and "just figured that a driving case would go with the [six]."

¶ 19            Defendant further testified that in the courtroom on the day of trial, he told his counsel he was sure that he still did not want the offer, but when he said that, he did not know the drug case and driving case were mandatory consecutive. Defendant claimed the first time he learned the cases were consecutive was when he received a letter from his counsel about a month after he was found guilty in the drug case. Defendant further claimed that if he knew that the cases were consecutive, he would have accepted the plea offer made prior to trial.

¶ 20                                    2. *Trial Counsel's Testimony*

¶ 21            Karen Root testified that she was appointed to represent defendant in his cases. She testified that she had no independent recollection of the cases but wrote on the pretrial bond report that the cases were "mandatory consecutive." She explained that it is her custom and practice to

- 4 -

go through the bond report with clients and discuss if the cases were consecutive, although she had no specific recollection about doing so in this particular case. She testified that she conveyed all the offers from the State to defendant, but he rejected them because he wanted probation. She did acknowledge that she told defendant his cases were consecutive in a letter dated April 29, 2011, when they were discussing sentencing after the trial. She also acknowledged that she had sent him a letter prior to trial that did not mention that the sentences were consecutive. She explained that they were being rushed on the morning of trial and that the State made the final offer "less than five minutes before the case was called for trial."

¶ 22                            3. *The Parties' Arguments*

¶ 23            Defendant argued that under *Missouri v. Frye*, 566 U.S. 134 (2012), defendant had to show that he would have accepted the offer and that the plea would have been entered into by the State. The trial court asked if it was speculation whether the State would have revoked the offer, and defendant noted the offer was made the morning of trial so it was reasonable to assume the offer would remain valid until the trial began.

¶ 24            The State argued that although defendant's counsel could not recall specifically if she went over the bond report with defendant, he rejected the offer because he wanted a better offer, which "had nothing to do with the consecutive nature of the case."

¶ 25                         4. *The Trial Court's Conclusion*

¶ 26            The trial court summarized the evidence and in particular noted that trial counsel testified that "in her notes on the predisposition report, she wrote down that something was consecutive as opposed to mandatory. [Trial counsel] did talk to [defendant] several times. It was her practice to go over things." The court concluded,

                "The evidence that he—if he'd known [the sentence] was consecutive that he would

have taken [the offer] is highly improbable. I mean, there's no reason for her to dissuade this guy from taking the offer. The credibility is that he was aware of this and chose to take his chances, and unfortunately for him, it didn't work out the way he wanted to."

The court then denied the petition for postconviction relief.

¶ 27　　　　This appeal followed.

¶ 28　　　　　　　　　　　　II. ANALYSIS

¶ 29　　　　Defendant appeals, arguing that the trial court committed manifest error when it ruled that defendant failed to show he would have taken the State's offer of a cap of eight years on all of his cases if he had known that the cases were mandatorily consecutive. We disagree and affirm.

¶ 30　　　　　　　　　　A. The Standard of Review

¶ 31　　　　In postconviction proceedings, at a third-stage evidentiary hearing the defendant has the burden of making a substantial showing of a constitutional violation. *People v. Pendleton*, 223 Ill. 2d 458, 473, 861 N.E.2d 999, 1008 (2006). Following dismissal after a third-stage evidentiary hearing for a postconviction petition, a court of review can overturn that decision only if it is manifestly erroneous. *Id.* "Manifest error is error that is 'clearly evident, plain, and indisputable.' " *People v. Beaman*, 229 Ill. 2d 56, 73, 890 N.E.2d 500, 510 (2008) (quoting *People v. Morgan*, 212 Ill. 2d 148, 155, 817 N.E.2d 524, 528 (2004)).

¶ 32　　　　　B. The Law Regarding Effective Assistance of Counsel

¶ 33　　　　All criminal defendants enjoy the constitutional right to effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was

deficient and that the deficient performance prejudiced the defendant." *People v. Domagala*, 2013 IL 113688, ¶ 36, 987 N.E.2d 767.

¶ 34    The constitutional guarantee of effective assistance of counsel applies to the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012), *People v. Hale*, 2013 IL 113140, ¶ 15, 996 N.E.2d 607. The right to effective assistance of counsel extends to the defendant's decision to reject a plea offer. *Hale*, 2013 IL 113140, ¶ 16. Defendants have the right to be reasonably informed of the direct consequences of accepting or rejecting a plea offer. *Id.*

¶ 35    If a defendant was not prejudiced by the alleged error of counsel, that alone is reason to reject a claim of ineffective assistance of counsel. *Id.* ¶ 17. To establish prejudice, a defendant must show that there is a reasonable probability that the result of the proceedings would have been different. *Id.* ¶ 18. In the context of rejecting a plea offer, "in order to establish the prejudice prong of *Strickland*, a defendant must show that he would have accepted the State's plea offer had counsel's performance not been deficient. Absent defendant's demonstration of this factor, prejudice cannot be proven ***." *Id.* ¶ 21.

¶ 36                                 C. This Case

¶ 37    Defendant argues that trial counsel was ineffective when counsel did not inform defendant that his two cases would require mandatory consecutive sentencing. Because the facts of this case demonstrate that defendant suffered no prejudice, in that the evidence does not indicate he would have otherwise accepted the plea offer, that alone is sufficient to uphold the trial court's ruling. *Id.* ¶ 17.

¶ 38    Defendant testified that he rejected the State's offer and wanted probation instead. The trial court ultimately concluded that because of this evidence, the notion that defendant would have accepted the offer had he known his sentences would be consecutive was improbable. We

note that the trial court was in the best position to judge the credibility of the testimony presented to it. Accordingly, we conclude that the trial court's decision was not manifestly erroneous.

¶ 39                                III. CONCLUSION

¶ 40          For the reasons stated, we affirm the trial court's judgment.

¶ 41          Affirmed.