NOTICE
This Order was filed under
Supreme Court Rule 23 and is not
precedent except in the limited
circumstances allowed under Rule
23(e)(1).

2021 IL App (4th) 190668-U

NO. 4-19-0668

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 21, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| MANUEL MARTINEZ, | ) | No. 10CF1336 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Brian L. Bower, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Presiding Justice Knecht and Justice Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court did not err by denying defendant's postconviction petition after a
       third-stage evidentiary hearing.

¶ 2        On remand from this court for further second-stage proceedings, defendant,

Manuel Martinez, filed an amended petition under the Post-Conviction Hearing Act

(Postconviction Act) (725 ILCS 5/122-1 *et seq.* (West 2014)), asserting numerous claims,

including a claim of ineffective assistance of trial counsel during the plea negotiation process and

a claim of ineffective assistance of appellate counsel for failing to raise that issue on appeal.

Defendant asserted trial counsel gave him incorrect information about how the State was

handling deoxyribonucleic acid (DNA) evidence, which had a significant impact on his decision

to reject a generous plea offer.  The State did not amend their previous motion to dismiss

defendant's postconviction petition.  In March 2019, the Champaign County circuit court

dismissed all of the claims in defendant's amended petition except for the claim of ineffective assistance of trial counsel during plea negotiations and the related claim of ineffective assistance of appellate counsel. After a third-stage evidentiary hearing in September 2019, the court denied defendant's remaining postconviction claims.

¶ 3        Defendant appeals, asserting the circuit court erred by denying after a third-stage evidentiary hearing his remaining ineffective assistance of trial counsel claim. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5        In August 2010, the State charged defendant by information with two counts of aggravated criminal sexual abuse of M.M., a Class 2 felony (720 ILCS 5/12-16(d), (g) (West 2010)) and one count of aggravated criminal sexual abuse of T.M., a Class 2 felony (720 ILCS 5/12-16(c)(1)(i), (g) (West 2010)). In January 2011, the State also charged defendant by information with one count of predatory criminal sexual assault of a child as to T.M., a Class X felony (720 ILCS 5/12-14.1(a)(1), (b)(1) (West 2010)) and one count of criminal sexual assault of M.M., a Class 1 felony (720 ILCS 5/12-13(a)(4), (b)(1) (West 2010)).

¶ 6        In October 2010, defendant hired attorney Michael McClellan to represent him, and the circuit court allowed defendant to substitute counsel. In December 2010, initial laboratory results indicated semen was found in the vaginas of both the victims. In January 2011, the State filed a motion to permit the destruction of evidence necessary to complete deoxyribonucleic acid (DNA) testing, which the court granted. The record indicates McClellan did not receive the results of that testing until early July 2011. At an August 4, 2011, hearing on defendant's motion to reduce bond, at which defendant was present, the prosecutor explained the DNA results indicated one out of three males could not be excluded from having produced the DNA. As such, defendant was neither identified nor excluded by the DNA test results. In

denying the motion, the circuit court noted the DNA evidence did not exclude defendant. Additionally, it further stated, given the victims' ages, the time frame, and what the victims reported occurred, the DNA evidence supported an inference that could be attributable to defendant. The court noted that it was considering the DNA evidence for the purpose of bond.

¶ 7    On August 19, 2011, McClellan filed a motion to continue and a motion for leave to withdraw as defense counsel. On August 22, 2011, the circuit court held a hearing, at which it only addressed the motion to continue because McClellan had not given notice of his motion to withdraw as counsel. At the hearing, McClellan stated he first believed, based on a conversation with the prosecutor, the DNA evidence was not going to be a factor in this case and did not think the State was going to use it. McClellan admitted it was his misunderstanding and not the State misleading him. McClellan advised defendant of his erroneous belief. Shortly thereafter, he talked with the prosecutor again and learned the State was going to use the DNA evidence because it did make some ties to defendant. McClellan noted he still did not have a handle on the DNA and defendant could not afford the retention of an expert to analyze the DNA results. The court granted a continuance.

¶ 8    On September 26, 2011, the circuit court held a hearing on McClellan's motion to withdraw as counsel. Defendant did not object to McClellan's withdrawal. The court granted McClellan's motion and appointed the Champaign County Public Defender's Office to represent defendant.

¶ 9    After a lengthy trial in early 2012, a jury found defendant guilty of aggravated criminal sexual abuse of M.M., criminal sexual assault of M.M., aggravated criminal sexual abuse of T.M., and predatory criminal sexual assault of a child as to T.M. In March 2012, the circuit court sentenced defendant to prison terms of 7 years for both aggravated criminal sexual

abuse counts, 15 years for criminal sexual assault, and 32 years for predatory criminal sexual assault of a child. The court ordered the aggravated criminal sexual abuse sentences to be served concurrently with one another and consecutively to the sentences for criminal sexual assault and predatory criminal sexual assault of a child. The sentences for criminal sexual assault and predatory criminal sexual assault of a child were ordered to be served consecutively with one another. Defendant filed a motion to reconsider his sentence. After an April 2002 hearing, the court reduced defendant's prison term for predatory criminal sexual assault of a child to 22 years and kept the rest of the sentencing judgment the same.

¶ 10 Defendant filed a direct appeal and argued (1) he was denied effective assistance of trial counsel, (2) the circuit court improperly admitted hearsay evidence, and (3) his case should be remanded for a hearing to address his posttrial allegations of ineffective assistance of counsel. This court affirmed the circuit court's judgment. *People v. Martinez*, 2013 IL App (4th) 120337-U.

¶ 11 In October 2014, defendant filed his *pro se* postconviction petition, asserting ineffective assistance of appellate counsel based on appellate counsel's failure to challenge the sufficiency of the evidence. Defendant also filed a motion for preservation of evidence for forensic testing and a motion to allow DNA testing. In February 2015, the circuit court moved defendant's *pro se* postconviction petition to the second stage of the proceedings and appointed counsel to represent him.

¶ 12 In July 2015, postconviction counsel filed an amended postconviction petition, adding several claims of ineffective assistance of trial counsel. One of the claims asserted trial counsel McClellan misled defendant by inaccurately representing the State's position on the use of DNA evidence in defendant's case causing unnecessary delays in the proceedings and

hindering defendant's ability to make informed decisions about the State's "generous plea bargain deal." In August 2015, the State filed a motion to dismiss defendant's motion to allow DNA testing and defendant's amended postconviction petition. In November 2015, the circuit court entered a written order allowing the motion to preserve evidence and denying the motion to allow DNA testing. On February 1, 2016, the court entered a written order dismissing defendant's amended postconviction petition. Defendant appealed both the denial of the motion to allow DNA testing and the dismissal of his amended postconviction petition. However, he did not raise any issues as to the denial of the motion to allow DNA testing, and thus, we did not address that judgment. *People v. Martinez*, 2018 IL App (4th) 160151-U, ¶ 14. As to the dismissal of the amended postconviction petition, we found defendant was denied reasonable assistance of counsel. *Martinez*, 2018 IL App (4th) 160151-U, ¶ 24. We reversed the circuit court's judgment dismissing defendant's postconviction petition and remanded the case for further second-stage proceedings under the Postconviction Act. *Martinez*, 2018 IL App (4th) 160151-U, ¶ 24.

¶ 13          On remand, the circuit court appointed the public defender to represent defendant on his postconviction petition and granted defendant leave to file a new postconviction petition. In September 2018, appointed counsel filed a certificate under Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) and an amended postconviction petition. The amended petition alleged the following: (1) ineffective assistance of counsel McClellan, (2) insufficiency of the evidence, (3) ineffective assistance of appellate counsel, (4) ineffective assistance of trial counsel, and (5) a due process violation. Counsel attached seven exhibits to the document and filed an affidavit by defendant. The State informed the court it would not be amending its motion to dismiss. On March 1, 2019, the circuit court entered a written memorandum of opinion granting the State's

motion to dismiss all of defendant's postconviction claims except for the allegation McClellan rendered ineffective assistance of counsel by giving defendant incorrect information about the State's intent to use the DNA evidence, which played a significant role in defendant's decision to reject a favorable plea offer for probation and the related claim of ineffective assistance of appellate counsel.

¶ 14 On September 19, 2019, the circuit court held a third-stage evidentiary hearing on the one remaining postconviction allegation. Defendant testified on his own behalf and presented the testimony of McClellan and presented a letter McClellan sent to the Attorney Registration and Disciplinary Commission (ARDC) in response to defendant's letter to ARDC. At defendant's request, the court took judicial notice of the transcripts from the court hearings on the following dates: (1) July 18, 2011; (2) August 2, 2011; (3) August 4, 2011; and (4) August 22, 2011. The State presented the testimony of Adam Dill, an assistant state's attorney, and several exhibits.

¶ 15 Defendant testified the inside of his mouth was swabbed with a Q-tip for DNA testing when he was arrested and questioned by the police. His first attorney was Diana Lenik. The State had made an offer for defendant to plead guilty to a lesser charge with a sentence of seven years. Lenik advised defendant to take the plea offer. Defendant did not take the offer because he did not (1) commit the offense, (2) want it on his record, and (3) want to register as a sex offender. Defendant did not like Lenik's advice, so he hired McClellan. They discussed how the DNA evidence might be applicable in defendant's case. The laboratory results for the DNA evidence in his case were outstanding for a long time. Eventually, McClellan met with defendant in July 2011 and summarized the laboratory results for the DNA evidence. In mid-August 2011, defendant again met with McClellan. McClellan informed defendant the State

would not be presenting the DNA evidence at trial. McClellan told defendant the DNA results were inconclusive. He also explained a new plea offer to defendant, which was for defendant to plead guilty to a probationable charge with a sentence of probation and time served in county jail. Defendant did not accept the offer, and McClellan moved to withdraw as defendant's attorney. McClellan's statement indicating the DNA evidence would not be used at his trial played into his decision not to accept the offer. Defendant testified that, if McClellan would have explained the DNA evidence could have been used at his trial and could be used to convict him, defendant would have accepted the plea offer. Moreover, if McClellan would have advised defendant he was facing a nonprobationable count at trial and the DNA evidence was going to be used at trial, defendant would have weighed his decision about the plea offer differently. Defendant acknowledged McClellan advised him several of the charges against him had sentences that would be mandatorily consecutive and some of them would be served at 85%.

¶ 16 McClellan testified defendant was frustrated with Lenik's representation of him because she was pushing defendant to take the State's plea offer, which he did not want to do because he had not done anything wrong. After McClellan took over defendant's case, the seven-year plea offer was reinstated, and McClellan conveyed that offer to defendant. Defendant was not interested and did not authorize McClellan to discuss anything further about the plea offer. In January 2011, McClellan discussed with defendant DNA evidence because a laboratory report had noted semen was detected on the swabs of both victims. At that time, the laboratory had not attempted to identify the source of the semen. After the initial laboratory report, the State added the additional charges. In July 2011, McClellan received the final laboratory report, which indicated one in three nonrelated Hispanic individuals could have contributed to the sample and defendant could not be excluded from having contributed to them. McClellan took

- 7 -

the report to mean the results were inconclusive. McClellan discussed the results with Dill, the prosecutor on the case, and Dill also thought the results were relatively inconclusive. McClellan informed defendant Dill had the same reservations about the laboratory results and Dill did not think he would use them at trial. At the August 4, 2011, hearing on defendant's August 2, 2011, motion to reduce bond, McClellan argued defendant's bond should be reduced in part due to the inconclusive DNA results. Defendant was present at the hearing. The circuit court did not accept the argument and noted the DNA evidence could still impact defendant. The court pointed out the presence of semen on the victims was probative. After the hearing, Dill told McClellan he was going to use the DNA evidence, and McClellan advised defendant of Dill's statement.

¶ 17 McClellan further testified the State made a new plea offer with a sentence of probation on August 19, 2011. McClellan spoke with defendant several times that day about the offer. Defendant was concerned about having to register as a sex offender even if he had probation. Registering as a sex offender was a significant concern for defendant. Defendant did not mention the DNA evidence in considering the probation plea offer. In the end, defendant rejected the State's new offer against McClellan's advice. At an August 22, 2011, hearing, McClellan argued his motion to continue defendant's trial and learned he needed to give notice on his motion to withdraw as counsel. McClellan wanted to withdraw as counsel because defendant was not following McClellan's advice. McClellan did not expect his motion to withdraw to be granted and filed the motion to continue because McClellan did not have a handle on the DNA evidence and defendant could not pay for a DNA expert. McClellan testified he had a difficult time with DNA evidence like the type in this case and could not explain it to defendant. McClellan withdrew from defendant's case on September 26, 2011. During

McClellan's representation of defendant, defendant never changed his position he did not commit the charged crimes.

¶ 18      Dill testified his initial plea offer in defendant's case was seven years in prison, which was in the middle range for a Class 1 felony and the maximum for Class 2 felonies. When the offer was made, Dill had not received any DNA laboratory results. After the initial laboratory results in December 2010 indicated semen was found on the swabs for both victims, Dill filed additional charges against defendant. Dill did not rescind the seven-year offer after he filed the new charges. He explained it was not his practice to revoke plea offers. Dill described the final laboratory results as indicating "somewhat of a match." Dill testified he had never seen DNA results like the ones in this case. Moreover, Dill did not recall telling McClellan the State would not use the DNA evidence at defendant's trial. Dill extended the second plea offer with a sentence of probation because he was having difficulties contacting the victims' families and needed the victims' testimony at trial. After the trial was continued based on McClellan's motion, Dill was able to reconnect with the victims and met with them and their families. If McClellan had come to him after Dill met with the victims and their families and stated defendant wanted the probation offer, Dill would not have accepted it. Dill did reinstate the seven year offer after defendant obtained new counsel when McClellan withdrew, and defendant again rejected the offer.

¶ 19      After hearing the parties' arguments, the circuit court denied defendant's remaining postconviction claims. The court first denied the claim of ineffective assistance of appellate counsel, finding the claim of ineffective assistance of trial counsel by McClellan did not appear in the record and could not have been raised on appeal. It then denied defendant's ineffective assistance of counsel by McClellan during the plea negotiation proceedings because

defendant failed to meet his burden of proof in showing deficient performance by McClellan. The court found that, while McClellan had informed defendant the State would not use the DNA evidence, McClellan told defendant after the August 4, 2011, hearing, the State was going to use the DNA evidence. The circuit court also discussed in defendant's presence how the DNA evidence could be relevant. The court also pointed out defendant had professed his "innocence throughout."

¶ 20 On September 19, 2019, defendant filed a timely notice of appeal from the circuit court's judgment of the same date in compliance with Illinois Supreme Court Rule 606 (eff. July 1, 2017). Accordingly, this court has jurisdiction of defendant's appeal from the denial of his amended postconviction petition under Illinois Supreme Court Rule 651(a) (eff. July 1, 2017).

¶ 21                                    II. ANALYSIS

¶ 22 On appeal, defendant only challenges the circuit court's denial of his claim of ineffective assistance of trial counsel.

¶ 23 The Postconviction Act provides a remedy for defendants who have suffered a substantial violation of constitutional rights at trial. *People v. Pendleton*, 223 Ill. 2d 458, 471, 861 N.E.2d 999, 1007 (2006). It sets forth three stages of proceedings. *Pendleton*, 223 Ill. 2d at 471-72, 861 N.E.2d at 1007. At the first stage, the circuit court independently reviews the defendant's postconviction petition and determines whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2008). If it finds the petition is frivolous or patently without merit, the court must dismiss the petition. 725 ILCS 5/122-2.1(a)(2) (West 2008). If the court does not dismiss the petition, it proceeds to the second stage, where, if necessary, the court appoints the defendant counsel. *Pendleton*, 223 Ill. 2d at 472, 861 N.E.2d at 1007. Postconviction counsel may amend the defendant's petition to ensure

- 10 -

his or her contentions are adequately presented. *Pendleton*, 223 Ill. 2d at 472, 861 N.E.2d at 1007. Also, at the second stage, the State may file a motion to dismiss the defendant's petition or an answer to it. *Pendleton*, 223 Ill. 2d at 472, 861 N.E.2d at 1008. If the State does not file a motion to dismiss or the court denies such a motion, the petition advances to the third stage, wherein the court holds a hearing at which the defendant may present evidence in support of his or her petition. *Pendleton*, 223 Ill. 2d at 472-73, 861 N.E.2d at 1008.

¶ 24 At both the second and third stages of the postconviction proceedings, "the *defendant bears the burden* of making a substantial showing of a constitutional violation." (Emphasis added.) *Pendleton*, 223 Ill. 2d at 473, 861 N.E.2d at 1008. When, as in this case, a petition advances to an evidentiary hearing and fact-finding and credibility determinations are involved, this court will not reverse the circuit court's decision unless it is manifestly erroneous. *Pendleton*, 223 Ill. 2d at 473, 861 N.E.2d at 1008. A "manifest error" is one that "is clearly evident, plain, and indisputable." *People v. Ruiz*, 177 Ill. 2d 368, 384-85, 686 N.E.2d 574, 582 (1997).

¶ 25 Defendant's sole claim on appeal asserts ineffective assistance of counsel by his attorney during the plea negotiation process. Our supreme court has "recognized a sixth amendment right to effective assistance of counsel during plea negotiations." *People v. Hale*, 2013 IL 113140, ¶ 16, 996 N.E.2d 607. Specifically, " '[a] criminal defendant has the constitutional right to be *reasonably* informed with respect to the direct consequences of accepting or rejecting a plea offer.' " (Emphasis in original.) *Hale*, 2013 IL 113140, ¶ 16 (quoting *People v. Curry*, 178 Ill. 2d 509, 528, 687 N.E.2d 877, 887 (1997)). That right "extends to the decision to reject a plea offer, even if the defendant subsequently receives a fair trial." *Hale*, 2013 IL 113140, ¶ 16.

¶ 26 This court analyzes ineffective assistance of counsel claims under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Evans*, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1163 (1999). To obtain reversal under *Strickland*, a defendant must prove (1) his counsel's performance failed to meet an objective standard of competence and (2) counsel's deficient performance resulted in prejudice to the defendant. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163. To satisfy the deficiency prong of *Strickland*, the defendant must demonstrate counsel made errors so serious and counsel's performance was so deficient that counsel was not functioning as "counsel" guaranteed by the sixth amendment (U.S. Const., amend. VI). *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163. Further, the defendant must overcome the strong presumption the challenged action or inaction could have been the product of sound trial strategy. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163. To satisfy the prejudice prong, the defendant must prove a reasonable probability exists that, but for counsel's unprofessional errors, the proceeding's result would have been different. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163-64.

¶ 27 Regarding prejudice in the context of a plea offer, the United States Supreme Court has held a defendant must show a reasonable probability of the following: (1) he or she would have accepted the plea offer but for counsel's deficient advice, (2) the plea would have been entered without the State canceling it, (3) the circuit court would have accepted the plea bargain, and (4) "the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Missouri v. Frye*, 566 U.S. 134, 147 (2012); see also *Lafler v. Cooper*, 566 U.S. 156, 164 (2012). In *Hale*, 2013 IL 113140, ¶ 20, our supreme court found *Frye* and *Cooper* "control and the factors set forth in those cases must now be relied upon in deciding if prejudice has been shown where a plea offer has lapsed or

been rejected because of counsel's deficient performance."

¶ 28    As to the deficiency prong of the *Strickland* test, McClellan testified he first told defendant the State would not be using the DNA evidence at trial but changed that statement after the August 4, 2011, hearing. McClellan spoke with Dill after the hearing and Dill informed him the State would be presenting the DNA evidence at defendant's trial. McClellan then advised defendant the State would be using the DNA evidence at his trial. On the other hand, defendant testified he did not recall McClellan stating the State was going to use the DNA evidence. In addition to McClellan and defendant's conversations, defendant was present in the courtroom during the August 4, 2011, hearing, when the judge explained the possible relevancy of the DNA evidence in defendant's case. At an evidentiary hearing, the circuit court serves as the fact finder and thus has the responsibility of determining witness credibility, deciding the weight to be given testimony and evidence, and resolving any evidentiary conflicts. *People v. Domagala*, 2013 IL 113688, ¶ 34, 987 N.E.2d 767. Here, the circuit court found McClellan did correct his statement to defendant about the State's use of DNA evidence at trial. Thus, McClellan's performance was not deficient. Defendant contends the fact McClellan corrected his statement is irrelevant because McClellan admitted he had a tough time interpreting the DNA evidence. However, as the circuit court found in sustaining the State's objection to some of McClellan's testimony about his lack of knowledge regarding DNA evidence, such testimony is not relevant to the *sole* issue concerning "McClellan's advice regarding the State's intent to use the DNA evidence" during plea negotiations.

¶ 29    As to the prejudice prong, defendant notes he testified McClellan's erroneous advice played into his decision not to accept the plea offer. However, the State presented evidence indicating defendant's desire not to be a registered sex offender was a significant

concern in pleading guilty.  Moreover, defendant fails to address the other three *Frye* factors for showing prejudice.  As the State notes, the prosecutor did not make the probation plea offer again after he was able to make contact with the victims.  Defendant did not meet his burden of proving prejudice.

¶ 30        Since defendant failed to prove both prongs of the *Strickland* test, his claim of ineffective assistance of trial counsel by McClellan was properly denied.

¶ 31                          III. CONCLUSION

¶ 32        For the reasons stated, we affirm the Champaign County circuit court's judgment.

¶ 33        Affirmed.