**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 210122-U

Order filed June 27, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of the 14th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Rock Island County Illinois. |
| | ) | |
| v. | ) | Appeal No. 3-21-0122 |
| | ) | Circuit No. 08-CF-910 |
| | ) | |
| DALEVONTE D. HEARN, | ) | The Honorable |
| | ) | Richard A. Zimmer, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HETTEL delivered the judgment of the court.
Presiding Justice Holdridge and Justice Davenport concurred in the judgment.

_____

**ORDER**

¶ 1  *Held*:  Trial court's denial of defendant's postconviction petition alleging ineffective assistance of counsel following third-stage evidentiary hearing was not manifestly erroneous where defendant failed to show he was prejudiced by counsel's performance.

¶ 2  Defendant Dalevonte D. Hearn was charged with attempted murder and aggravated domestic battery. Defendant rejected a plea agreement, and the case proceeded to a jury trial. Defendant was found guilty of both offenses, and the trial court sentenced him to 30 years in

prison. Defendant filed a postconviction petition alleging ineffective assistance of counsel. The petition proceeded to the third stage of postconviction proceedings, where the trial court denied it. Defendant appeals the denial of his petition. We affirm.

¶ 3                                            I. BACKGROUND

¶ 4        On September 19, 2008, defendant was charged in a two-count information. Count I alleged defendant committed attempted first-degree murder (720 ILCS 5/8-4(a)-(c), 9-1(a) (West 2008)), a class X felony, on September 18, 2008, when he "repeatedly kicked Octavia McGowan in the head." Count II alleged defendant committed aggravated domestic battery (*id*. §12-3.2(a), 12-3.3(a)-(b)), a class 2 felony, against McGowan based on the same conduct. The charges stemmed from an incident that occurred in Rock Island.

¶ 5        Defendant was charged in Iowa for three additional offenses he committed on September 18, 2008: robbery in the second degree (Iowa Code Ann. § 711.3 (2008)), theft in the second degree (Iowa Code Ann. § 714.1(1) & 714.2(2) (2008)), and felony eluding (Iowa Code Ann. § 321.279(3) (2008)). Defendant was found guilty of those offenses. In January 2009, the Iowa court sentenced defendant to a 10-year prison term for robbery, a 5-year concurrent prison term for theft, and a 5-year consecutive prison term for eluding, subjecting defendant to a 15-year aggregate prison sentence.

¶ 6        On April 6, 2009, defendant filed a demand for a speedy trial on the charges pending against him in Rock Island. On July 10, 2009, the parties appeared in court. Defendant was represented by his counsel, Jennifer Gardner, and the State was represented by Margaret Osborn. The following exchange took place:

    "MS. GARDNER: Yesterday we had a 402 conference that we started and then there
    was an issue of whether or not he was extendable. That kind of stopped the 402 conference,

Your Honor. I called the appellate public defender. They believe that -- they didn't have any case law to cite to me, but they believe the reading of the statute would mean that he were. The State actually called their appellate representative and --

THE COURT: That's case law?

MS. GARDNER: Okay. That to the State that he is extendable, so --

\* \* \*

MS. GARDNER: So, Your Honor, we started to talk about what -- you know, if there were to be a -- we did an offer of -- a counter-offer of four years and the five years. Their offer was to plead open to Count 2, dismiss Count 1 which now would be a cap of 14. Maybe -- I guess that's a determination for the Court to make whether or not you would find him extendable or not. That's ultimately your determination and being so based upon the nature of the offense and his background, we're -- what you feel is appropriate.

\* \* \*

THE COURT: I know, but I am saying the problem -- I am just thinking out loud. The problem I have here is when he gets arrested, they can decide to try him on the lesser charges first and then bring him over and try and get the extended term on the more serious charges if they were the same or equal quality just because of the fact that now he has a prior conviction where in the past he didn't. I guess that's what I am looking at.

On the other hand -- and again, I am just thinking out loud. You can take this off the record. (Whereupon an off-the-record discussion was held.)

THE COURT: Mr. Hand [*sic*], you understand what my thought process is?

THE DEFENDANT: Yes, sir.

3

THE COURT: Because my thought is that obviously I -- they're offering something pretty nice given the fact you're facing a Class X felony on the other side of this.

THE DEFENDANT: Right.

THE COURT: If we continued it two weeks, would you have any problem -- would that give you enough time?

MS. GARDNER: I don't want the delay to be to the defense. He's been adamant that he wants to continue the proceeding with trial, so there will be no request by the defense for a delay.

THE COURT: Well, he's been in here since what?

MS. OSBORN: April 3rd.

THE COURT: So May, June is 60, April is --

THE DEFENDANT: August 1st will be my 120.

THE COURT: Pardon me?

THE DEFENDANT: August 1st will put me at 120.

THE COURT: Well, let's do this, I've got an opening on Friday, we'll set this for trial for Friday, see if we can get it done before then.

MS. GARDNER: Set if for trial on Friday so it would overlap --

THE COURT: If we have to, or we just have to move to the first part of next week.

MS. OSBORN: That's fine.

THE COURT: Okay. So that way we haven't continued your case at all, Mr. Hearn.

MS. OSBORN: I need to check the availability of all my medical people.

THE COURT: Right. As soon as you find out and verify, let Margaret know. Then just get back in front of me. I think we can take care of this. Okay, Mr. Hearn?

4

THE DEFENDANT: Yes, sir.

THE COURT: That satisfy everything?

THE DEFENDANT: Yes, sir."

¶ 7    Three days later, on July 13, 2009, the parties appeared in court again. The following exchange occurred:

"MS. GARDNER: Your Honor, there's been an offer conveyed by the State which I did not put on the Record before that they were offering plead to Count II. It's my understanding that disregarding the advice of counsel that my client is refusing that offer.

THE COURT: Okay. Mr. Hearn, you understand you have absolutely no obligation to accept an offer at all.

THE DEFENDANT: Yes, sir.

THE COURT: You don't have to accept an offer you have the absolute right to go to trial and at this point in time you are exercising that right, correct?

THE DEFENDANT: Yes, sir."

¶ 8    The court then asked the prosecutor if she was ready for trial. She responded that one of her witnesses was unavailable until July 27, 2009. The trial court then scheduled the trial to begin on July 27, 2009, before a different judge. The parties appeared for a pretrial proceeding on July 23, 2009, and announced they were ready for trial.

¶ 9    Defendant's jury trial began on July 27, 2009. Tyona Baylor testified that Octavia McGowan was her neighbor and was at her house on September 18, 2008. At approximately 4:00 p.m., defendant knocked on Baylor's door and entered Baylor's house. According to Baylor, defendant told McGowan to "come on." When McGowan refused, defendant said, "Bitch, come on." When McGowan again refused, Baylor said defendant "came in and starting beating

5

[McGowan] up." Baylor testified that defendant punched McGowan mainly in her face but "was kind of swinging everywhere" and may have punched McGowan in her chest and shoulder as well. Defendant stopped momentarily and apologized to Baylor before he began hitting McGowan again. According to Baylor, defendant "was like telling her that he would kill her or he'll stab her, and like stuff like that."

¶ 10    Baylor testified that she went outside to try to find help, and when she returned, she saw McGowan on the ground unconscious and defendant kicking and "stomping" McGowan in her head repeatedly. Baylor said she saw "a lot of blood" coming from McGowan. Baylor told defendant she had called the police, and defendant ran out her back door. Baylor said McGowan was unconscious and "barely breathing."

¶ 11    McGowan testified that on September 18, 2008, she was at Baylor's house when defendant came over and told her to come home. When McGowan refused, defendant punched her. She remembers trying to get away from defendant but doesn't remember what happened after that. As a result of defendant's attack, McGowan suffered a brain injury. She had to re-learn how to eat, walk, write and read.

¶ 12    Dr. Stephen Marshall, a physician at St. Francis Medical Center, testified that he treated McGowan when she arrived at St. Francis after being airlifted from Rock Island on September 18, 2008. Dr. Marshall testified that when McGowan arrived at St. Francis, she was "pretty close" to dying.  Tests showed McGowan had blood in and around her brain. She was given a breathing tube and feeding tube. She was discharged from St. Francis on October 14, 2008, and could breathe on her own but still could not eat without a feeding tube, could not follow commands, had no bowel or bladder function and could not move on her own.

¶ 13        After the State presented its case, defendant requested a directed verdict on the attempted murder charge, arguing that the State failed to prove he intended to kill McGowan. The trial court denied the motion.

¶ 14        Defendant testified he had been dating McGowan for ten months on September 18, 2008. At some point that day, defendant saw McGowan "walking with some dude." Defendant testified that he was "hurt" and walked around for a while. Defendant decided he wanted to talk to McGowan and went looking for her. He found McGowan at Baylor's house and said, "baby, come home so I can talk to you." Defendant did not hear McGowan's response, so he repeated himself. Defendant testified he did not remember what he did next. He said, "I just like woke back up and seen I was damaging the person that I loved." After that, he ran.

¶ 15        In closing, defense counsel argued that although defendant seriously injured McGowan, he did not intend to kill her and asked the jury to find defendant "not guilty" of attempted murder. The jury found defendant guilty on both counts. Defendant filed a posttrial motion, asking the court to enter a not guilty verdict on the attempted murder charge or grant him a new trial on both charges. Defendant argued, in part, that the State failed to prove beyond a reasonable doubt that he intended to kill McGowan. The trial court denied defendant's motion and sentenced defendant to concurrent prison terms of 30 years for attempted murder and 14 years for aggravated domestic battery. The court ordered that defendant's sentence be served consecutively to his Iowa sentence. Defendant filed a motion to reconsider sentence, which the trial court denied.

¶ 16        Defendant appealed. We affirmed defendant's convictions and sentence. *People v. Hearn*, No. 3-09-0994 (2011) (unpublished order under Illinois Supreme Court Rule 23).

¶ 17        In 2012, defendant filed a *pro se* postconviction petition. The court advanced the petition to the second stage of postconviction proceedings and appointed postconviction counsel.

7

Defendant's postconviction counsel filed an amended postconviction petition. The State filed a motion to dismiss the amended petition. Defendant's postconviction counsel then filed a second amended postconviction petition. The trial court granted the State's motion to dismiss. Defendant appealed. We reversed and remanded for further postconviction proceedings, finding that defendant's postconviction counsel "failed to shape defendant's claims into proper legal form." *People v. Hearn*, 2016 IL App (3d) 140618-U.

¶ 18 In 2020, defendant filed his fifth amended postconviction petition alleging that his trial counsel was ineffective for failing to properly advise him of the consequences of accepting or rejecting a plea offer. The petition proceeded to a third-stage evidentiary hearing, which was held on February 21, 2021.

¶ 19 At the evidentiary hearing, defendant testified that as trial approached on the charges against him, the State offered to drop or dismiss the attempted murder charge if he pled guilty to aggravated domestic battery. Defendant further testified that "[t]he sentence offer was either 7 or 14 [years]." Defendant testified that when he went before the judge on July 10, 2009, there was a question about whether he "was extendable" because of his Iowa convictions. Defendant testified that on July 10, 2009, he did not yet know if the sentencing range for the plea offer would be 3 to 7 years or 3 to 14 years. According to defendant, the trial judge told him on July 10, 2009, that he would have 14 days to accept the plea deal. Defendant testified that when he left the courtroom on July 10, 2009, he still did not know what the sentencing range would be if he accepted the plea offer. Defendant testified that his counsel did not tell him on or before July 13, 2009, whether he would be subject to a sentencing cap of 7 years or 14 years.

¶ 20 Defendant testified that he told the court on July 13, 2009, that he wanted to proceed to trial "[b]ecause I have 14 days to accept the plea deal and they still didn't know about the extended

-- extended time." Defendant did not believe he was reasonably informed about the consequences of accepting or rejecting the State's plea offer because his counsel never told him if he "was extendable or not." Defendant testified he would have accepted the plea whether his sentence was capped at 7 years or 14 years.

¶ 21    When the State asked defendant if he and his trial counsel were more focused on going to trial or obtaining a plea deal, defendant responded: "I want to say going to trial but we didn't really have no type of defense." Upon further questioning, defendant admitted that his counsel argued in defense to the attempted murder charge that he did not intend to kill McGowan.

¶ 22    Defense attorney Gardner testified that she spent the bulk of her time on defendant's case "attempting to be successful at trial." Gardner testified she talked to defendant about "different plea options." Gardner recalled that defendant's trial date was "getting close" to the 120-day deadline and thought it was possible that the State would "not be able to pull all of her witnesses together and have a successful trial within the speedy trial rights of the defendant." Gardner recalled there being an issue about whether defendant's sentence was extendable because of his Iowa convictions. Gardner remembered contacting the Appellate Public Defender's office about that issue, and said, "[t]hey believed that it would be [extendable]." The following colloquy took place with the attorney representing the State questioning Gardner and Gardner answering:

"Q Okay. And that would change it from 3 to 17 (sic) to 3 to 14 on count II?

A  That was a possibility. The one thing that we did not have was the minutes of testimony from the Iowa charge. We just simply had the statute that we were relying on. So with that there wasn't anything – just the way the Iowa statutes are sometimes it can be a little odd, and so it was – it was definitely a threat that he was extendable and a belief that he was extendable.

Q   Okay.

A   With the time-frame that we had, you know, there was some things that we just did not know but it was believed to be that it would be."

¶ 23   Gardner recalled making a counteroffer to the prosecutor of four years and then five years on July 10, 2008. In response, the prosecutor laughed and said, "I'm not doing that." Gardner testified that she believed defendant was extendable because she wrote "extendable" on defendant's charging document and had research about it in defendant's case file. Gardner did not recall defendant ever saying he would have taken a plea with a cap of either 7 or 14 years. Gardner testified that she could not give defendant a "definitive response" about what the sentencing range would be because "[t]he buck doesn't stop with me, so, yes, it has to be a judicial ruling."

¶ 24   On March 23, 2021, the circuit court issued its ruling denying defendant's postconviction petition. The court found that defense counsel's performance was deficient because counsel did not definitively advise defendant that he was subject to an extended-term sentence. However, the court found defendant failed to establish prejudice because defendant testified that he would have accepted a plea offer of either 7 or 14 years. The court queried, "So if there is confusion, but he would have accepted either offer, where is the prejudice?" Additionally, the court found defendant failed to establish that he rejected the State's plea based on counsel's advice and not for some other reason, stating: "It's clear looking at the transcript of this court he wanted to go to trial."

¶ 25                                II. ANALYSIS

¶ 26   The Postconviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)) provides a process for defendants to challenge their convictions or sentences for violations of federal or state constitutional rights. *People v. Whitfield*, 217 Ill. 2d 177, 183 (2005). To be entitled to postconviction relief, a defendant must show he suffered a substantial deprivation of his federal or

state constitutional rights in the proceedings that produced the conviction or sentence being challenged. *Id.*

¶ 27    The Act provides for three stages of review by the trial court. *People v. Domagala*, 2013 IL 113688, ¶ 32. At the first stage, the circuit court may dismiss a petition if it is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2020). If the circuit court does not dismiss the petition, the petition advances to the second stage where counsel is appointed if the defendant is indigent. *Id.* § 122-4; *Domagala*, 2013 IL 113688, ¶ 33. At the second stage, "the circuit court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation." *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). If a defendant makes a "substantial showing of a constitutional violation" at the second stage, then the petition advances to a third-stage evidentiary hearing. *Id.*; 725 ILCS 5/122-6 (West 2020). At the third stage, the defendant has the burden to show a substantial denial of a constitutional right by a preponderance of the evidence. *People v. Brickhouse,* 2018 IL App (3d) 150807, ¶ 38.

¶ 28    At a third-stage evidentiary hearing, the circuit court acts as factfinder, determines witness credibility and the weight to give testimony and evidence, and resolves any evidentiary conflicts. *Id.* At this stage, the circuit court is "able to observe and hear the witnesses at the evidentiary hearing and, therefore, occupies a 'position of advantage in a search for the truth' which 'is infinitely superior to that of a tribunal where the sole guide is the printed record.' " *People v. Coleman*, 183 Ill. 2d 366, 384 (1998) (quoting *Johnson v. Fulkerson*, 12 Ill. 2d 69, 75 (1957)). We will not reverse a circuit court's decision following a third-stage evidentiary hearing unless it is manifestly erroneous. *People v. Ortiz*, 235 Ill. 2d 319, 333 (2009). A circuit court's ruling is manifestly erroneous if it is "arbitrary, unreasonable, and not based on the evidence." *People v. Wells*, 182 Ill. 2d 471, 481 (1998).

¶ 29	Both the United States and Illinois constitutions guarantee criminal defendants the right to the effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *Strickland v. Washington,* 466 U.S. 668, 685-86 (1984); *People v. Albanese,* 104 Ill. 2d 504, 525-26 (1984). "The sixth amendment right to the effective assistance of counsel applies to the plea-bargaining process." *People v. Hale*, 2013 IL 113140, ¶ 15. Claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland. Id.* "To prevail on a claim of ineffective assistance under *Strickland*, a defendant must show both that counsel's performance 'fell below an objective standard of reasonableness' and that the deficient performance prejudiced the defense." *People v. Hodges*, 234 Ill. 2d 1, 17 (2009) (quoting *Strickland*, 466 U.S at 687-88).

¶ 30	To establish prejudice in the context of plea negotiations, the defendant must show a reasonable probability that (1) but for counsel's deficient advice, he would have accepted the plea offer, (2) the plea would have been entered without the prosecution cancelling it, (3) the trial court would have accepted the plea bargain, and (4) " 'the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.' " *Id.* ¶¶ 18-20 (quoting *Missouri v. Frye*, 566 U.S. 134, 147 (2012)). "The disparity between the sentence a defendant faced and a significantly shorter plea offer can be considered supportive of a defendant's claim of prejudice." *Id.* ¶ 18.

¶ 31	When a defendant alleges ineffective assistance during plea negotiations, a "showing of prejudice must encompass more than a defendant's own subjective, self-serving testimony." (Internal quotation marks omitted.) *Id*. "Rather, there must be 'independent, objective confirmation that defendant's rejection of the proffered plea was based upon counsel's erroneous advice' and not on other considerations." *Id.* (quoting *People v. Curry*, 178 Ill. 2d 509, 532 (1997)).

" 'An inquiry into whether the rejection of a plea is knowing and voluntary *** is not the correct means by which to address a claim of ineffective assistance of counsel' arising out of the plea-negotiation process." *Id.* ¶ 23 (quoting *Lafler v. Cooper*, 566 U.S. 156, 173 (2012)). Instead, the defendant must show that "counsel's deficient advice *led defendant to reject the plea offer*." (Emphasis in original.) *Id.* Stated another way, "a defendant must show that he would have accepted the State's plea offer had counsel's performance not been deficient." *Id.* ¶ 21. "Absent defendant's demonstration of this factor, prejudice cannot be proven." *Id.*

¶ 32     In this case, the trial court properly ruled that defendant did not establish prejudice because he did not show that his trial counsel's deficient performance caused him to reject the State's plea offer. To the contrary, the evidence shows that counsel recommended that defendant accept the State's plea offer requiring him to plead guilty to count II in exchange for a sentencing cap of 14 years because counsel believed that defendant was "extendable" due to his Iowa convictions. It was against counsel's advice that defendant rejected the plea and chose to proceed to trial. Furthermore, defendant's own testimony at the evidentiary hearing establishes that counsel's advice did not cause him to reject the State's plea offer because defendant testified that he would have accepted a plea offer from the State with a sentencing cap of either 7 years or 14 years.

¶ 33     The record in this case establishes that in hindsight defendant wishes he had accepted the State's plea offer with a cap of 14 years because he received a much longer sentence after being found guilty of both attempted murder and aggravated domestic battery. However, at the time of plea negotiations, defendant chose to reject the State's offer because he wanted to go to trial. While defendant claimed at the evidentiary hearing that he had "no type of defense" at trial, the record belies this assertion. Defense counsel repeatedly argued at trial and in a posttrial motion that the State failed to prove defendant intended to kill McGowan, supporting an acquittal for attempted

13

murder. Additionally, the record reflects that defendant's speedy-trial term was close to expiring and that defense counsel believed the State may not be able to proceed to trial prior to its expiration. Thus, it was not unreasonable for defendant to reject the State's plea offer and choose to proceed to trial.

¶ 34 Here, defendant failed to prove he rejected the State's plea because of counsel's erroneous advice. Thus, he failed to establish prejudice. See *Hale*, 2013 IL 113140, ¶ 21. The trial court did not err in ruling defendant failed to prove ineffective assistance of counsel and denying defendant's postconviction petition.

¶ 35                                   III. CONCLUSION

¶ 36 The judgment of the circuit court of Rock Island County is affirmed.

¶ 37 Affirmed.